### DALLAS CONSOLIDATED ELECTRIC STREET RAILWAY COMPANY v. KATIE MOTWILLER.

#### Decided June 20, 1908.

**1.—Damages—Diminished Capacity to Earn Money—Evidence—Charge.**

Where, in a suit for damages for personal injuries, it is uncontroverted that plaintiff's injuries resulted from defendant's negligence, and the petition contained an allegation of impaired capacity to "earn money at her ordinary occupation, or any other for which she is qualified during the balance of her future life," and the evidence clearly showed that plaintiff's capacity to earn money had been impaired, it was not reversible error for the court to instruct the jury to take into consideration, in estimating the damages, plaintiff's diminished capacity to earn money, even though there was no evidence that her capacity to earn money in the particular occupation in which she was engaged when the injury occurred, had been diminished. Especially in this case when the verdict is not excessive aside from the fact of impaired capacity.

**2.—Same—Same—Pleading.**

Where diminished capacity to earn money in a particular vocation is alleged to arise from a wrongful act, it is necessary to prove some facts from which the jury would be justified in determining the probable loss that would flow from such diminished capacity. But where there is a general allegation that the injury caused a diminished capacity to earn money in all ways, and the evidence shows the party is so injured, it is a proper element of damage to be submitted to the jury, for them to determine from their general knowledge and experience.

**3.—Damages—Pleading—Evidence—Harmless Error.**

Testimony as to personal injuries not alleged, considered and held harmless error.

Appeal from the District Court of Dallas County. Tried below before Hon. Thos. F. Nash.

*Baker, Botts, Parker & Garwood* and *Finley, Knight & Harris,* for appellant.—In the absence of evidence from which the jury could properly and intelligently ascertain the amount of loss sustained by plaintiff by reason of the impairment of her ability to earn money, it is error for the court to submit this element to the jury; and there being no evidence in this case from which the jury could intelligently ascertain the amount of loss sustained by plaintiff by reason of the impairment of her ability to earn money, the court erred in submitting such item to the jury as an element of damage for which recovery could be had. St. Louis S. W. Ry. v. Smith, 86 S. W., 946; St. Louis S. W. Ry. v. Acker, 99 S. W., 122; Houston & T. C. Ry. v. Bird, 48 S. W., 756; Gulf, C. & S. F. Ry. v. Mangham, 95 Texas, 419; International & G. N. Ry. v.

Simcock, 81 Texas, 503; Houston, E. & W. T. Ry. v. Richards, 20 Texas Civ. App., 203; San Antonio & A. P. Ry. v. Robinson, 73 Texas, 283; San Antonio & A. P. Ry. v. Beam, 50 S. W., 412; St. Louis S. W. Ry. v. Laws, 61 S. W., 499; Christie v. Galveston City Ry., 39 S. W., 638; Texas & Pac. Ry. v. Bigham, 36 S. W., 1112; Gulf, C. & S. F. Ry. v. Greenlee, 62 Texas, 351; Galveston, H. & S. A. Ry. v. Cooper, 2 Texas Civ. App., 49; Galveston, H. & S. A. Ry. v. Parish, 43 S. W., 537; Galveston, H. & S. A. Ry. v. Smith, 28 S. W., 112; Davis v. Texas & Pac. Ry., 42 S. W., 1008.

*W. T. Pace* and *Fitzhugh & Smith,* for appellee.—Under plaintiff's pleadings and evidence the court was warranted in submitting the question to the jury of "Her impaired ability to earn money, if any," and committed no error thereby. Texas & Pac. Ry. v. Bowlin, 32 S. W., 918; Fordyce v. Withers, 1 Texas Civ. App., 540; Missouri, K. & T. Ry. v. Johnson, 37 S. W., 775; De la Vergne Reg. Mch. Co. v. Stahl, 24 Texas Civ. App., 474; St. Louis & S. F. Ry. v. Neely, 101 S. W., 482; Southern K. Ry. v. Sage, 10 Texas Ct. Rep., 277; San Antonio & A. P. Ry. v. Turney, 33 Texas Civ. App., 626; Galveston, H. & S. A. Ry. v. Parish, 43 S. W., 537.

RAINEY, CHIEF JUSTICE.—The appellee, a widow, sued the street railway company, appellant, for injuries to her, caused by the negligence of the railway employes. Defendant answered by general and special exceptions, general denial and contributory negligence. A trial resulted in a verdict and judgment for plaintiff in the sum of $2,806.

The first error assigned is: "The court erred in the following paragraph of his charge to the jury: 'If you find for the plaintiff you will find such an amount as you believe from the evidence will be a fair and just pecuniary compensation for her physical suffering and mental pain, if any, her impaired ability to earn money, if any, the reasonable amount incurred for medicine and medical attention, if any, made necessary as the direct and proximate result of the defendant's negligence, if any.'" This charge is complained of because it authorized the jury to find for pecuniary compensation for "impaired ability to earn money," because there is no evidence from which the jury could properly and intelligently ascertain the amount of loss sustained by reason of the impairment of her ability to earn money; that is, there was no sufficient basis in the evidence for such submission.

There is no assignment of error attacking the verdict or judgment on the ground that appellee was not injured, as claimed, by the negligence of the appellant's servants. We therefore conclude that she was entitled to recover. We will then consider whether the charge complained of as to impaired ability to earn money is such error as will cause a reversal of the judgment.

On the issue of appellee's disability to earn money, we give portions of the testimony of several witnesses on this point, that her condition may be fully understood. Mrs. Motwiller, the plaintiff, testified: "I had gotten through work about six o'clock. When I fell I lighted on this side (left side). I was dazed. I stood up with my weight on the other

foot. The other foot was a heavy weight hanging to my body. It brought my monthly sickness on, and it was not time for it again. Ever since the accident I have had my monthly sickness every three weeks, and now it is getting less than three weeks apart, and lasts me nearly all the time. I have to be prepared for it all the time. On one occasion, at the office, I left off my pads, and I had on four skirts, with a heavy black skirt, and it came through all of these and got on the cushion I was on, and I handed it to a girl down there and she had to take it out and conceal it. It just comes most any time. Before the accident I was regular. I was considered very healthy. I would walk to my work and walk home, two miles from where I worked. The feeling I had in my leg was pain. It seemed to be heavy and stiff, and is that way now. I never before had a doctor with me except when my two children were born. I could stand most anything before, but now I have a nervous trembling to my muscles. What flesh I have in my left leg quivers, and the muscles around my mouth quiver. I do not suffer with headache; I hardly ever have a headache. I take the car right at my door and ride to the transfer, and it is only a few steps to where I work, and that is all the walking I do. I never had any trouble with my kidneys before the accident; now I have to take medicine every time they operate. Sometimes I go two days, and there is a fullness in my bladder all the time. I know my leg is shorter now than it was before the accident. I can take a few steps and stop, and get about a short distance by holding to things, and I can not walk more than a few blocks with a cane without stopping and resting and steadying myself. I have almost given up walking at all." On cross-examination she testified: "I work all the time, only I get off early. I have the best people in the world to work for. Yes, sir, during last week I cried in the office. They often ask me there what I am crying about. I cry there often. Yes, sir, I was on the witness stand about two hours last January, and I did not cry any then, but, Mr. Harris, my condition is worse. My working hours are eight to six. Sometimes I get there at half past eight. I do pretty much as I please. As a general rule I do not stay there full time. Some days I have only twelve letters to write. In the store we have cabinets and phonographs all along, and I can walk along holding to one cabinet and then go along and hold to another. I always have to hold to something when I walk so as to prevent it from hurting me. Before the accident my standard weight was 140 pounds. In January this year I weighed 105 pounds. I weighed last week and weighed 98 pounds."

W. T. Pace testified: "On the 5th of June, last year, when I got home, plaintiff was lying on a couch and groaning, her face contorted and hands all cramped up. We got Dr. Poe. Three days after I called in Dr. Smart for consultation, and she was in such condition if you touched her, moved or manipulated the parts, she would halloo, and you could hear her across the street. She remained two weeks confined to her bed. During the night I could hear her groaning. She had something the matter with her hip. I often assisted her in turning over, and moving her about the bed, and at these times she would scream out with pain. Her left leg was immovable. I have known her since 1900 intimately, and I have always known her to be a healthy woman before this accident. Her weight was 140 pounds, and she walked to town, a mile and one-

half or two miles, without any complaint. Her face is thin; she has fallen off almost to a skeleton."

Mr. Newman testified: "Plaintiff could not move her leg. She would scream every time you started to move her. Before the injury she was in good health, and walked everywhere she wanted to. Since the accident she has lost a great deal of weight, and is not the same woman at all. She can not get about even in the house, and suffers all the time. She is physically a different person. I don't believe now she would weigh over 100 pounds. She can not get about hardly at all without a cane, and even catches to the furniture in passing. Her condition is worse than it was at the former trial. Her height is about five feet six inches."

Dr. Poe testified: "I found her wrought up, nervous, and suffering injury to her hip joint. On examination I concluded it was an injury to the hip joint and the contiguous tissues thereto. I treated her two weeks. I saw her twice a day most of the time. Dr. Smart made a casual examination. I saw her at her mother's house. The condition of the hip and soreness remained the same. The joint seemed to be limited in its motion, and lasted until the last time I saw her. The last time I examined her I found a shortening of the limb—about three-fourths of an inch. The acetabulum could be fractured. From the condition of soreness that seemed to be present, there might be an injury of that kind in this case. The principal result of an impaction of the femur and acetabulum would be inflammatory action. The motion would be limited, naturally, from inflammation. Ankylosis is limited motion and stiffness caused by inflammation. From the hypothetical question you put to me, I would attribute the lameness and that condition to some contusion of the tissues immediately surrounding the joint, or in the joint. Ankylosis would also be the result of such an injury. I would attribute the inflammation in the joints to the soreness and straining of the ligaments. When I was waiting on her she seemed not to have any control over her left limb at all. I took it to be partial paralysis on account of lack of motion in that joint. I would consider, under the same statement of facts, that she would suffer with her spine. It would also cause a derangement of the menses, and I elicited from the patient that she suffered in this respect. If she suffered with her back and kidneys, and in passing her urine, I would attribute that to the fall and the general shock caused to the nervous system. I would attribute the nervousness and hysterical condition to the effect produced upon the nervous system. I saw her today, and I think the injury to the joint is permanent. If she weighed 140 pounds, and was in good health, and received such a fall as you described, and now weighs only 98 pounds, I would attribute the loss of weight to the general effect of the fall and the pain she suffered, and I think her nervous troubles would be of a lasting nature." On cross-examination he testified: "I know nothing of the kidney trouble except the symptoms she gave me. I discovered some swelling down the internal muscles. I was present when Drs. Allen and Duncan made their examination. They did not find her limbs the same length, but a degree of shortening; they found about the same degree I did. I treated her last about two or three months after the accident; the limb would not move out from its fellow. Part of the

neck of the femur might be broken and give inflammatory action, and still not affect the bone itself, and Dr. Duncan also examined her, and reported a shortening. They made several examinations and reported a shortening. Dr. Allen asked her if she ever had her leg broken. Dr. Allen said there was an infallible way to measure for a shortening, and measured that way, and found the same amount of shortening to the limb that I did. We all found a shortening. We did not agree that the two limbs were of the same length, because when I examined her the day before, to my satisfaction, and in the examination of the bone itself I found a difference of one-half inch that I could account for."

There was some conflicting testimony as to the shortening of appellee's limb, but the foregoing testimony shows upon what the jury could base their verdict. The foregoing evidence, we think, clearly shows that appellee's ability to earn money was impaired, which is a proper element of damages.

But the question arises, was it proper for the court to tell the jury to consider, in determining the damages, "her impaired ability to earn money?" The allegation of impaired capacity is to "earn money at her ordinary occupation, or any other for which she is qualified, during the balance of her future life." At the time of trial she was engaged as a stenographer, but the proof does not show what salary she received before and after the injury. This would preclude a recovery for any special damages for impaired ability in that particular avocation, but we see no reason why a recovery could not be had for general impairment to earn money. Fordyce v. Withers, 1 Texas Civ. App., 545. We certified to the Supreme Court the question as to the correctness of the charge on this point, and it held there was no error under the facts shown. Dallas Con. E. St. Ry. v. Motwiller, 101 Texas, 515.

Where a diminished capacity to earn money in a particular avocation is alleged to arise from a wrongful act, it is necessary to prove some facts from which the jury would be justified in determining the probable loss that would flow from such diminished capacity. Houston & T. C. Ry. v. Bird, 48 S. W., 756; St. Louis S. W. Ry. v. Smith, 86 S. W., 946. But where there is a general allegation that the injury caused a diminished capacity to earn money in all ways, and the evidence shows the party is so injured, is it not a proper element of damage to be submitted to the jury for them to determine, from their general knowledge and experience, the amount of such damages? To illustrate: Take a young man who has attended school up to his majority, and before he has time to pursue any avocation he is wrongfully injured to such an extent his ability to earn money is diminished, and that fact is fully established, could it be said that some particular facts should be further proven to form a basis from which the jury might reach a conclusion before the court would be authorized to submit such an issue? To do so, it seems, would deprive such a party of the benefit of an element of damages that is allowed by law.

It is true that the evidence in this case does not show any basis for the recovery of any special amount for diminished capacity in the avocation of stenographer, but it did show, in a general way, that appellee's capacity was diminished for that as well as for all other avocations.

But, aside from diminished capacity to earn money, the evidence

shows injuries for the recovery of which the verdict is not excessive. In fact, there is no complaint that it is too large and excessive. Under the circumstances, and in view of the fact there is no assignment of error attacking the verdict as excessive, we do not think the verdict should be reversed on the ground urged. We understand that some of our courts have held the giving of such charge was error in somewhat similar cases to this, where it does not appear whether or not the verdict was attacked as excessive.

In Houston & T. C. Ry. v. Bird, *supra,* a case similar to this, the judgment was reversed on two assignments; one on the excessiveness of the verdict, and the other the giving of a charge on lessened capacity. The verdict appears large, but whether or not the assignment of excessive verdict was the controlling reason for reversal we can not say; but in this case, the verdict not being excessive, and there being no assignment to that effect, we do not think the charge harmful.

Another proposition is submitted under the first assignment of error, to the effect that the evidence showed that plaintiff had sustained certain injuries, or endured physical pain or mental suffering not mentioned in the petition. The only testimony that forms the basis for this complaint is, first, a witness stated: "I believe she claimed her head and arms hurt her some, as well as I remember;" and another, a physician, stated she said she "suffered with some irregularity with reference to her kidneys and digestive organs." The plaintiff testified she did not suffer from headache, and when the physician mentioned "digestive organs," plaintiff's attorney said: "He used the words 'digestive organs,' and we haven't alleged that, and we would like for him to mention the particular organs," and then asked the question: "Mention the particular organs; you say the kidneys?" A. "Yes, sir, and the female organs."

Under these circumstances, and in view of the testimony as to plaintiff's injuries and sufferings which conform to the pleading and the size of the verdict, we think defendant was not affected to its prejudice.

Finding no reversible error in the record the judgment is affirmed.

*Affirmed.*

Writ of error refused.