H. T. K. FREDHOM v. J. F. SMITH.[1]

March 1, 1935.

No. 30,224.

[1]Reported in 259 N. W. 80.

*Bundlie & Kelley,* for appellant.

*Robert J. McDonald* and *William H. De Parcq,* for respondent.

JULIUS J. OLSON, JUSTICE.

In this, a negligence action, plaintiff prevailed below. Defendant appeals from an order denying his motion for new trial.

The accident took place at the intersection of Riverside and Twenty-fifth avenues in south Minneapolis on September 7, 1932, at about 4:30 o'clock in the afternoon. The day was bright and sunny, the streets dry, and there were no distracting circumstances. Both parties to this action were driving in an easterly direction upon Riverside avenue, plaintiff leading and defendant following some distance behind, estimated from 8 to 20 feet. Traffic at this point was controlled by a "stop-and-go" semaphore located in the center of the intersection. As plaintiff was approaching the intersection the semaphore flickered for the "stop" sign to go on. Before reaching the sidewalk line the "stop" sign was on. In obedience thereto, plaintiff stopped about in line with the sidewalk. A brief moment thereafter he heard a crash behind him, was thrown forcibly forward against the steering wheel by the impact, and was jarred thereby. His car was pushed forward by the impact some 10 to 15 feet. Plaintiff, upon turning around to see what had struck his car, observed defendant backing away from plaintiff's car. Both parties then proceeded across the intersection and parked near the right-hand curb, defendant having called to plaintiff, saying that he wanted to talk to him. In the ensuing conversation defendant said that it was his fault, that he had given plaintiff "an awful crash," and that it was "lucky it was not worse." He advised plaintiff to have the car repaired and added that he

was insured and would see that the damages were taken care of. Plaintiff proceeded home, driving his car thereto. He felt dizzy and had to drive slowly, keeping his car close to the curb. To avoid traffic he drove down Twenty-eighth street and then turned into an alley. Upon arrival at his home he put the car in the garage and went into the house and sat down on a chair. His neck pained him. In a few minutes his condition became such that he had to be helped to his bed. The doctor was called but could not come that evening but prescribed treatment over the telephone. The next morning the doctor called, and from then on for a period of two weeks made calls daily or at least every other day. Plaintiff complained of pains in his neck and shoulders. The doctor found that his neck muscles were swollen and that he could not straighten his neck and was unable to move his head in any direction. Sedatives and hot applications were prescribed. He was told to rest. This condition continued for a period of about four months, plaintiff remaining in bed most of the time but able to be about at other times. Prior to his injury he had always been well and never knew there was anything the matter with him. He was accustomed to hard work and had no difficulty at all theretofore in doing his work. Between the time of the accident and the time of trial he had lost 20 to 25 pounds in weight. His condition has not improved. His ability to work no longer exists. During the following December a tremor developed in his right hand and forearm. His doctor later ascertained that plaintiff was not improving as well as might be hoped for so he called into consultation with him one Dr. Johnson. The consultant examined plaintiff on three different occasions. He found that the so-called tremor resembled paralysis agitans and thought there was an indication of a physical change in the back lower part of plaintiff's brain. The doctor was of opinion that plaintiff had a dormant condition of arthritis prior to the accident and that this was aggravated, set in motion, or increased, by the accident. Plaintiff's medical experts are agreed that plaintiff's condition is directly traceable to the accident, which set in motion and was the exciting or precipitating cause of the paralysis agitans with which plaintiff is suffering and

will continue to suffer. He is permanently disabled. The tremor with which he is afflicted, his loss of associated movements, and flattening of the face all indicate brain injury. They are of the view that plaintiff had a tendency to paralysis agitans before the accident but that if the accident had not occurred it is improbable that the latent condition would have become active over a long period of time, estimated at from 7 to 10 years, perhaps not even then. In other words, plaintiff's condition was passive. The active cause bringing into action this passive condition was the accident. Paralysis agitans is claimed to be very insidious and slow in its development. Plaintiff's disability is claimed by his physicians to be due to both paralysis agitans and arthritis. At the time of the accident and prior thereto plaintiff's earnings were at the rate of about $200 per month. He was doing small contracting jobs, and it appears from the evidence that he was fairly successful in that regard. There is no testimony to controvert his claim in this respect.

The medical experts testifying for defendant could see no causal relation between the accident and plaintiff's condition. The medical testimony cannot be harmonized. The evidence is as conflicting here as it is in respect of the claims of the parties with relation to the cause of the accident. It was for the jury to determine upon proper instructions what the facts were.

Defendant assigns a number of errors, but these are conveniently grouped as follows: Whether the court erred (1) in refusing to instruct the jury that eastbound traffic on Riverside avenue had a right to proceed into and through the intersection until the "stop" sign appeared on the semaphore even after the flicker light had flashed indicating an immediate change from "go" to "stop"; (2) in instructing the jury that plaintiff might recover special damages in the way of loss of earnings and, as a part thereof, whether the court's charge suggested or permitted a duplication of such damages; (3) are the damages awarded excessive, thereby indicating that the jury was under the influence of passion and prejudice in arriving at the amount it did.

■ ■ There were the customary two opposing claims, plaintiff asserting negligence as a basis for liability on the part of defendant,

defendant claiming plaintiff's contributory negligence prevents such result. In plaintiff's behalf the statement of facts hereinbefore stated indicates the theory or claim upon which plaintiff bases his right of recovery. The court carefully instructed the jury respecting the conflicting claims made by the parties, first outlining plaintiff's claims as to the manner in which the accident happened, and then proceeding to set out defendant's claims thus:

"The defendant, on the other hand, denies that he was negligent, claims that as he approached the intersection in question he was watching the semaphore; and that the plaintiff drove his car partly into the intersection; that the change in the semaphore came first through the flicker of the bright light, and then to the "Stop" signal, after the plaintiff had proceeded partly into the intersection; and that the defendant could not avoid hitting the plaintiff's car, because of the sudden stopping of the plaintiff's car while it was partly in the intersection. And the defendant denies that he is liable for any injuries suffered by the plaintiff, if any; and claims that they were caused through the plaintiff's own negligence, through his contributory negligence, I should say."

It is not suggested that the court's summation of defendant's position was erroneous; hence it is clear that the jury were required to find and determine which version was worthy of belief, the burden of proof being placed where it belonged as to each claim. It is clear that the fact issues of defendant's negligence and plaintiff's contributory negligence were properly submitted to the jury and that the evidence amply sustains the conclusion reached. Turnbloom v. Crichton, 189 Minn. 588, 250 N. W. 570. For a very complete annotation respecting liability for accidents occurring at crossings as affected by reliance upon or disregard of traffic signals, see 75 A. L. R. 970, *et seq.*

■ It is next asserted that the court erred in its instructions to the jury in respect of loss of earnings. On this phase of the case the court instructed the jury that plaintiff was seeking "remuneration for the loss of earnings from the time that he was injured, on September 7th, 1932, to the present time, and also for

loss of earnings which to a reasonable certainty you find he may sustain hereafter because of his injuries. * * * As to loss of earnings; if you find the plaintiff is entitled to recover, you will allow such amount as you find he has reasonably suffered to this time because of the injuries sustained, and as, to a reasonable certainty, he will sustain in the future because of the defendant's negligence proximately causing the plaintiff's injuries." The court then proceeded to tell the jury to be careful in not allowing excessive damages but that they allow only such damages "as will reasonably tend to compensate the plaintiff." We have difficulty in finding error here. The following cases are useful: Anderson v. Young, 98 Minn. 355, 108 N. W. 298; Libaire v. M. & St. L. R. Co. 113 Minn. 517, 130 N. W. 8; Stuhr v. Wright County Tel. Co. 119 Minn. 508, 138 N. W. 693; Burch v. Hoy & Elzy Co. 131 Minn. 475, 155 N. W. 767; Patterson v. Blatti, 133 Minn. 23, 157 N. W. 717, L. R. A. 1916E, 896, Ann. Cas. 1918D, 63; Stenshoel v. G. N. Ry. Co. 142 Minn. 14, 170 N. W. 695; Martin v. Tracy, 187 Minn. 529, 246 N. W. 6; Johnston v. Selfe, 190 Minn. 269, 251 N. W. 525. It is true, as stated in Martin v. Tracy, 187 Minn. 529, 246 N. W. 6, that the measure to be applied is loss of earning capacity rather than loss of earnings. This, however, we do not consider of vital importance. As is aptly said by defendant in his brief: "Juries are not particularly concerned over or greatly influenced by abstract statements." It is not at all probable, in fact most unlikely, that the jury would draw a distinction as fine spun as the distinction sought. Nor was the court's attention directed to this distinction.

If the charge on this phase of the case was not of sufficient importance in counsel's estimation to require a suggestion to the court, or if counsel then did not discern error, it is not likely that a jury of laymen would be likely to go far astray. At most, if there is error, it is without prejudice. Nor do we find justification for defendant's claim that the charge permitted duplication of damages. On the question of measure of damages for loss of earning capacity of a person engaged in business for himself, see note 9 A. L. R. 510; 27 A. L. R. 430; 63 A. L. R. 142. The rule is thus stated in 27 A. L. R. 431:

"\* \* \* in an action to recover for personal injuries in measuring the loss of earning power of one engaged in business for himself, no evidence is admissible concerning the profits from capital invested in that business, or from the labor of others employed therein. But the nature and extent of the business in question may be considered, and the services of the plaintiff therein, in order to ascertain the value of such lost services, for the value of such personal services are properly considered in this connection."

■ Is the verdict so large ($11,000) that we, sitting in review, may say that it is infected with passion and prejudice and therefore to be vacated? The verdict is liberal but has the unqualified approval of the trial judge, who has many advantages that we do not possess. He saw and observed the parties and their witnesses. He is a man of learning and experience. The record bespeaks the utmost care in the conduct of the trial. Every presumption under such circumstances is in favor of the verdict. Instead of deeming the verdict excessive, the trial judge in his memorandum said:

"Complaint is made that the verdict is excessive. It covers medical expense, loss of earnings from the time of the injury on September 7, 1932, and physical injuries from that date on. \* \* \* The question was passed on by a carefully drawn jury. I am not inclined to say that it went beyond what the evidence warranted. In fact, I think the verdict quite conservative."

The measuring of pain and suffering, loss of capacity to be a useful member of society, the value of living a life free from pain with capacity to enjoy everything that life has for the next 18 years or more, that being plaintiff's expectancy, is peculiarly for the triers of fact. Each case must rest upon its own peculiar state of facts.

The cases on the subject of excessive damages will be found annotated in 2 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 2596. Damages held not to be excessive are similarly noted under § 2597.

We are not prepared to say, in view of prior decisions bearing upon this issue, that the verdict should be set aside or reduced.

Order affirmed.