Corden E. YATES, Plaintiff,

v.

Rodney H. DANN et al., Defendants.

Civ. A. 1051.

United States District Court
D. Delaware.

Oct. 20, 1958.

Abraham E. Freedman (of Freedman, Landy & Lorry), Philadelphia, Pa., and Henry A. Wise, Jr., Wilmington, Del., for plaintiff.

Stewart Lynch, Wilmington, Del., for defendant. J. Webster Jones, Philadelphia, Pa., of counsel.

LAYTON, District Judge.

Defendants here seek a judgment n. o. v., or in the alternative a new trial, in a seaman's action for personal injuries tried to a jury which awarded substantial damages. The injuries resulted when the plaintiff was attempting to slack off a tow line. As he reached the bitts, he lifted the line a half to a full turn and the line suddenly ran out, completely out of control, catching his right ankle in its coils and mangling it horribly against the bitts.

The case was first tried in 1949 and the jury returned a verdict for plaintiff. The trial Court then granted plaintiff's motion for a partial new trial directing the entry of a judgment for the plaintiff but ordering a new trial on the question of damages. Subsequently, the case was transferred to the Admiralty side of the Court and a second trial was held without a jury in 1954, after which the Court gave judgment for the plaintiff in the sum of $78,750.64, reduced to $31,321.00 because of his contributory negligence.

The defendants appealed from this judgment and the Court of Appeals sustained the entry of judgment in favor of the plaintiff but reversed the award of damages for the reason that, since the case originated as a law action with the right to jury trial, it was error thereafter to transfer the case to the Admiralty side with the result that the defendants were deprived of a right to trial by jury. 3 Cir., 223 F.2d 64. The case was accordingly remanded for a retrial limited solely to the question of damages.

There was a third trial at which the jury gave a verdict for the plaintiff in the sum of $74,000.00 reduced to $58,125.00 because of the plaintiff's contributory negligence.

The defendants urge that the plaintiff's action should be dismissed on their motion for judgment notwithstanding verdict or, in the alternative, that a new trial be granted. A number of alleged

errors have been assigned which will be taken up in order.

When this case was remanded for retrial by jury, the accompanying opinion of the Circuit Court stated in part (3 Cir., 223 F.2d 64, 67):

"Appellants also contend that appellee did not present a claim on which he was entitled to recover at all either because of negligence on appellants' part or because of unseaworthiness of appellants' vessel. On this point there is sufficient evidence in the record to support the jury's finding of liability."

As to the issue for new trial (aside from the direction for a jury), the Court said:

"In deciding the issue of damages, the jury will of necessity hear again the evidence bearing on the relative negligence of the parties in order to apply the comparative negligence rule."

The quoted language constitutes a clear direction to retry the case by jury upon the limited issue of damages under the comparative negligence rule.

Despite this, both as to the motion for judgment n. o. v. and for new trial, defendants' counsel have devoted a major portion of their brief to the contention that defendants were not liable at all rather than whether the plaintiff was guilty of contributory negligence. As I understand it, the subject matter of this contention (that defendants were guilty of no negligence) was fully argued before the Circuit Court to no avail. In result, the defendants are arguing to a District Court that the Circuit Court has committed error. Necessarily, I must decline to reconsider the subject matter of this point insofar as it concerns either the motion for judgment n. o. v. or the motion for new trial.

Several other assignments of error remain for disposition.

First, as a result of the following statement by a witness,[1] counsel for de-

---

1. This witness was a defendants' witness.

fendants made a motion for mistrial, the refusal to grant which is assigned as error:

"Q. Did you make a statement at that time?

"A. I didn't make any statement that I knew was going to Court. Some man came down there and told me he represented some insurance company and asked me a lot of questions."

 At the time the remark was made and again in the charge, the jury was admonished to ignore the existence of insurance. Both in the Courts of this State, Lord v. Poore, 9 Terry, Del., 595, 108 A.2d 366, and in the Federal Courts, Sun Oil Co. v. Pierce, 5 Cir., 224 F.2d 580, it has been held that where the incident was obviously inadvertent ·and that the plaintiffs' attorney was without fault, a Court in its sound discretion might refuse to grant a mistrial. This rule is applicable here and this ground of error will be dismissed.

Next, it appears that a witness (Reynolds) testified at the first trial completely differently than at the last trial at which I presided. So flagrant was the conflict in his testimony in certain respects that I momentarily considered referring the matter to the United States Attorney for action but eventually refrained from so doing. In considering this testimony, the following colloquy occurred in the presence of the jury:

The Court: "The jury, it seems to me, has certainly heard everything this witness knows, and with his refreshed recollection whereby he repudiated here in part and went back to what he said at the other (prior) trial—

Mr. Lynch: "No, he didn't repudiate it.

The Court: "Well, if he didn't we will let the jury decide that. It appeared to me· so. (To the jury) Please ignore my remarks when I said he repudiated his evidence in part. That is for you to decide and not for me."

██ Again, as a preliminary to the charge, I instructed the jury to ignore my characterization of Reynolds' testimony as a partial repudiation of testimony given at the former trial and to decide for itself which of the two pieces of testimony should be believed. Aside from the fact that a Federal Court may within limits comment upon testimony, I am of the view that my instructions to the jury were sufficient to cure any error which may have been created.

██ The defendants complain of my pretrial ruling directing them to produce a statement by one Wood, an important witness. As the result of an affidavit filed by the defendants, it appeared not only that Wood had given a statement adverse to the plaintiff some ten years after the accident (about which the plaintiff was apparently aware) but also that the same witness had given a statement shortly after the accident the contents of which the plaintiff did not know. Not only this, but Wood did not appear at the first trial. Upon discovering the existence of the earlier statement, the plaintiff demanded its production under Rule 34, Fed.Rules Civ.Proc. 28 U.S.C., and filed affidavits alleging good cause. There was no doubt in my mind that the plaintiff was entitled to see this earlier statement. Wood was a key witness and from the evidence the jury might well have believed that he was largely responsible for the accident. The procedure followed in demanding production seemed to conform substantially to the requirements laid down by this Circuit in Alltmont v. United States, 3 Cir., 177 F.2d 971, in an exhaustive opinion by Judge Maris, and plaintiff's request was in my judgment properly granted. Nor do I agree with the defendants' argument that the statement was privileged. The Supreme Court in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, held that such a statement was not privileged even in the case of a lawyer's work product assuming good cause were

shown.[2] This contention is unconvincing and is denied.

Next, the defendants argue very strenuously that there was no evidence before the jury of loss of earnings on the part of the plaintiff. While it is not altogether clear from the brief, I am assuming that this objection is intended to go to future lost wages. In this connection, plaintiff's actual wages and rates of pay were put into evidence followed by a good deal of testimony as to the wages which he might have earned based upon prevailing rates for a man of his capabilities. On this point, Judge Leahy, who tried the first case without a jury, stated in his opinion (D.C., 124 F.Supp. 125, 133):

"Where physical disability in a particular case is such it may extend for a period of time or permanently into the future, the method of ascertaining the measure of damages is by determining the loss of earning power rather than to measure future losses by referring to past losses. A man may have a physical disability which would justify him in accepting only limited employment with a corresponding lower rate of pay, but because of economic necessity a man may assume duties beyond his physical capacity in order to earn a higher rate of pay.

"This question was presented to the Supreme Court of Pennsylvania in Bochar v. J. B. Martin Motors, Inc., 374 Pa. 240, at page 244, 97 A. 2d 813, at page 815: 'The defendants contend that there was no evidence of impairment of earning power and that the fact that Bochar's wages were higher after the accident than before proves no deterioration of earning ability. A tort feasor is not entitled to a reduction

in his financial responsibility because, through fortuitous circumstances or unusual application on the part of the injured person, his wages following the accident are as high or even higher than they were prior to the accident. Parity of wages may show lack of impairment of earning power if it confirms other physical data that the injured person has completely recovered from the injuries. Standing alone, however, parity of wages is inconclusive. The office worker, who loses a leg has obviously had his earning ability impaired even though he can still sit at a desk and punch a comptometer as vigorously as before. It is not the status of the immediate present which determines capacity for remunerative employment. Where permanent injury is involved, the whole span of life must be considered. Has the economic horizon of the disabled person been shortened because of the injuries sustained as a result of the tort feasor's negligence? That is the test. And it is no answer to that test to say that there are just as many dollars in the patient's pay envelope now as prior to his accident. The normal status of a healthy person is to progress, and to the extent that his progress has been curtailed, he has suffered a loss which is properly computable in damages."

In my opinion, this statement represents good law and I so charged the jury at the last trial.[3] The point is not well taken.

There are several alleged errors of such little consequence as to require slight consideration. Objection is made that the jury was instructed that "It is admitted that the defendants failed to

2. The person who took this statement was not a lawyer but an investigator.

3. Parenthetically, it is interesting to note that based upon much the same testimony, Judge Leahy, without a jury, found for the plaintiff in the sum of $78,000, while this jury returned a verdict of $74,000. The difference in the degrees of comparative negligence may be easily attributed to the evidence of the witness, Wood, at this last trial indicating greater negligence on his part and less on plaintiff's part.

provide the plaintiff with maintenance and cure after he was released from the hospital \* \* \*." In fact, the record fully sustains such an admission by Mr. Dann.

 Defendants complain because in charging the jury it was stated, "Or it may be, according to your view of the evidence, that you will decide that the plaintiff was guilty of contributory negligence and that that negligence contributed, for example 20 per cent, 30 per cent or 50 per cent or some other higher or lower per cent to the accident \* \* \*." It is difficult to understand just what the defendants are excepting to unless it is meant that I should have also mentioned the possibility of 60 or 70 per cent of contributory negligence instead of using the words "or some other higher or lower per cent". If this is so, the objection is wholly without merit.

I dismiss without further comment defendants' point that it was error to allow an increase in the ad damnum clause towards the end of the trial. Such amendments have been permitted by the Delaware Courts and conform to the spirit of the Civil Rules that amendments may be freely allowed in the interest of justice. Compare Couto v. United Fruit Co., 203 F.2d 456, where the Second Circuit Court of Appeals permitted a similar amendment where the amount of the verdict exceeded the ad damnum clause.

Finally, the defendants charge error in my failure to give the following charge:

"In this case the plaintiff was in charge and in command of the tug on which he received his injury; thus he was under a duty toward his employer which he had consciously assumed as a term of his employment; his negligence or lack thereof is, therefore, to be determined by the peculiar duty and status he had assumed by being in charge of the ship; his actions must be judged in light of what a reasonable and prudent captain of a ship would have done or would not have done under the circumstances."

Now, this is clearly based upon Walker v. Lykes Bros. S. S. Co., 2 Cir., 193 F.2d 772, which is the basis for defendants' defense that there could be no liability here. The Third Circuit Court plainly repudiated this doctrine when remanding for a new trial on damages.

The standard of care for slacking off a tow line does not differ between a captain or deck hand. If it did, the requested charge should have been allowed. But the experts all testified that there was one safe way to slack off such a line. The plaintiff testified that he followed this method. Moreover, to permit a new trial upon a proposition of such limited merit as this in a case more than ten years old is scarcely justifiable.

An Order will be entered denying defendants' motions for judgment n. o. v. and for a new trial.