# LaVONNE WILSON, A MINOR, BY ARCHIE WILSON, HER GUARDIAN AD LITEM, v. LEONARD SORGE.

97 N. W. (2d) 477.

June 26, 1959—No. 37,651.

*Richard W. Johnson* and *Schermer & Gensler,* for appellant.
*Cashman & Smith,* for respondent.

DELL, CHIEF JUSTICE.

This is an action for personal injuries arising out of a collision between plaintiff's automobile and defendant's truck. Plaintiff was traveling south on U. S. Highway 65 in Owatonna and intended to turn left onto North Street. She began signaling with her automatic turn signals about 150 feet from the intersection and, at the same time, began decreasing her speed. She stopped at the entrance to the intersection in order to yield the right-of-way to oncoming traffic. While so stopped she was struck from behind by defendant's tractor-trailer truck which, prior to the accident, had been traveling behind her at less than the 500 feet prescribed by M. S. A. 169.18, subd. 8(b).[1] Although plaintiff had her foot on the brakes of her car at the time of the collision, it was thrown forward and came to rest 192 feet from the point of impact. Her injuries resulted in a "twenty-five to thirty per cent permanent disability" in the "use of the back and the neck" which prevents her from lifting heavy objects; from doing her housework as before; and from performing any of the chores which she formerly handled on her husband's farm.

At the close of plaintiff's case, defendant introduced some medical testimony and then rested. Plaintiff's motion for a directed verdict on the issue of liability was granted, and only the question of damages was submitted to the jury, which returned a verdict for plaintiff in the sum of $7,800. Defendant appeals from an order of the district court denying his motion for a new trial.

On appeal it is defendant's position that the trial court committed reversible error (1) by directing a verdict in favor of plaintiff, (2) by admitting in evidence certain medical testimony and a medical report prepared for plaintiff's attorneys, (3) by permitting plaintiff's coun-

---

[1] This was not a business or residence district as defined by M. S. A. 169.01, subds. 39, 40, and both parties so acknowledged.

sel to make what is claimed were improper and prejudicial comments in his closing argument, and (4) by instructing the jury that plaintiff might recover for impairment of her future earning capacity. We shall consider these issues in their order.

■ Not every case presents a conflict in the facts which must be resolved by a jury. In the instant case the facts are undisputed and, in fact, defendant presented no evidence at all on the issue of liability. He argues instead that solely by virtue of plaintiff's failure to signal that she was slowing down, she could have been contributorily negligent and that this was an issue for the jury. We cannot agree. Even when the evidence is viewed in the light most favorable to him, it is clear that the negligence here was all on the part of the defendant. By following so closely behind plaintiff's car he was clearly in violation of the statute. In so doing he was prima facie negligent.[2] It also appears that the negligence was the proximate cause of the accident, and no evidence to the contrary having been introduced, the directed verdict was entirely proper.[3] Plaintiff's conduct in the operation of her vehicle was in accord with the rules of the road. In anticipation of the impending turn she had begun signaling 150 feet from the intersection.[4] She also decreased her speed and then stopped to yield the right-of-way to the oncoming vehicle as she was required to do.[5] These actions should have given defendant sufficient notice of plaintiff's intention and if his vehicle had been under proper control he would have had no trouble in avoiding this accident.

■ Three objections are raised to the medical evidence in this case. The first relates to allowing Dr. Kenneth G. Henry, plaintiff's personal

---

[2] § 169.96.

[3] Cf. Tschida v. Dorle, 235 Minn. 461, 51 N. W. (2d) 561.

[4] See, § 169.19, subds. 5, 7. In Teas v. Minneapolis St. Ry. Co. 244 Minn. 427, 70 N. W. (2d) 358, and Martini v. Johnson, 204 Minn. 556, 284 N. W. 433, cited by appellant, there were fact questions as to whether the signals had been given soon enough. No such question is presented here.

[5] See, §§ 169.14, subd. 3, and 169.20, subd. 2. Conflicting evidence about the suddenness of the stops in Ryan v. Griffin, 241 Minn. 91, 62 N. W. (2d) 504, and Fredhom v. Smith, 193 Minn. 569, 259 N. W. 80, was for the jury. Here again, however, the evidence is clear and the facts are undisputed.

physician, to state an opinion based on his knowledge of this case; the second objection is that he was allowed to testify that he did not change his opinion after he received a report about plaintiff from an orthopedic surgeon; and the final objection relates to the admission in evidence of a medical report letter prepared for plaintiff's attorneys.

There was no error in permitting Dr. Henry to give his opinion. "[Q]uestions calling for the opinion of an expert witness must be based upon facts previously testified to by him, or facts testified to by others, or upon an agreed state of facts, or facts assumed hypothetically as true."[6] In the instant case plaintiff's attorney chose the first method; namely, to obtain an opinion based upon the doctor's own personal knowledge and observations gained during the course of his treatments and examinations. The record supports this approach. Dr. Henry had attended plaintiff over a period of years. He treated her for the injuries out of which this action arose; in fact, he saw her in the hospital within 15 to 20 minutes after the accident. He continued to see her and examined her again shortly before the trial. He testified that there were, to his knowledge, no intervening factors which could have affected her condition. His opinion was entirely proper.

Nor do we think it was reversible error to permit Dr. Henry to testify that he did not alter his opinion after receiving the report of the orthopedic surgeon. In Riley v. Luedloff, 253 Minn. 447, 92 N. W. (2d) 806, we recognized that opinions based on information obtained out of court from third parties other than the patient are hearsay and inadmissible, but that no prejudicial error results from their admission when they pertain to facts which are also corroborated by other competent testimony. In the instant case, in view of the independent testimony both by plaintiff and Dr. Henry, permitting him to testify that he did not alter his opinion after receiving the surgeon's report was not prejudicial.

The medical report letter to plaintiff's attorneys was first used by defense counsel in cross-examining Dr. Henry. On redirect examination plaintiff's counsel attempted to show that opposing counsel had

---

[6]Webb v. Minneapolis St. Ry. Co. 107 Minn. 282, 285, 119 N. W. 955, 956.

used a portion of the letter out of context and sought to introduce the entire letter, not to corroborate any prior testimony of the doctor, but to clarify exactly what he had written. The best evidence of what the letter contained was the letter itself and to that end it was admissible.[7]

■  We find no merit in the claim that plaintiff's counsel made improper and prejudicial comments in his closing argument. Granting a new trial for misconduct of counsel rests almost wholly in the discretion of the trial court which is in a better position to assess its impact upon the jury.[8] It is only when there has been a clear abuse of discretion that we will reverse on appeal. To do otherwise would penalize a party for his counsel's misconduct and we have consistently refrained from so doing.[9] Two instances of misconduct are set forth, one a statement by plaintiff's counsel that had the orthopedic surgeon been called to testify his testimony would not have affected the case,[10] and the other a comment by plaintiff's counsel about evidence which had been properly excluded and which counsel for defendant claims was made in an attempt to place the defense in a bad light.[11] The amount of the verdict indicates that it was not rendered under the influence of passion and prejudice and, while these statements were improper, we do not think the trial court abused its discretion in not granting a new trial.

■  The last assignment of error relates to the trial court's instruction to the jury that it might include as an element of plaintiff's damages the loss of or impairment to her future earning capacity. Defendant's position is that under this court's recent opinion in Person v. Sears, Roebuck & Co. 252 Minn. 110, 89 N. W. (2d) 694, it was error to submit this issue to the jury when there was no evidence in the record of the value of plaintiff's earning capacity. The opinion in the Person case was by a divided court. Although the opinion is a fairly

[7]Davidson v. St. Paul, M. & M. Ry. Co. 34 Minn. 51, 24 N. W. 324.

[8]Fenton v. Minneapolis St. Ry. Co. 252 Minn. 75, 89 N. W. (2d) 404.

[9]Nelson v. Twin City Motor Bus Co. 239 Minn. 276, 58 N. W. (2d) 561; Harris v. Breezy Point Lodge, Inc. 238 Minn. 322, 56 N. W. (2d) 655.

[10]Cf. Floen v. Sund, 255 Minn. 211, 96 N. W. (2d) 563.

[11]See, Minneapolis-St. Paul Sanitary Dist. v. Fitzpatrick, 201 Minn. 442, 277 N. W. 394, 124 A. L. R. 897.

recent one, it has already been the subject of criticism, not only on the part of lawyers,[12] but also in law review articles.[13] Accordingly, we have decided to reexamine the soundness of that opinion.

In Connolly v. Pre-Mixed Concrete Co. 49 Cal. (2d) 483, 489, 319 P. (2d) 343, 346, the court said:

"Loss of earning power is an element of general damages which can be inferred from the nature of the injury, without proof of actual earnings or income either before or after the injury, and damages in this respect are awarded for the loss of ability thereafter to earn money."

The preceding statement clearly represents the general rule of law which applies in other jurisdictions[14] and was apparently applied in Minnesota—at least prior to the Person case. In Ahlstrom v. Minneapolis, St. P. & S. S. M. R. Co. 244 Minn. 1, 27, 68 N. W. (2d) 873, 889, for instance, we held that an ordinary laborer was not required to introduce proof of specific pecuniary loss in order to recover for impairment of his earning capacity. If loss or diminution of earning capacity were to be measured on the basis of prior wages then the ordinary worker with a previous history of earnings would have the necessary data available. But he is not required to introduce it in evidence. In Johnson v. Howard, 45 Wash. (2d) 433, 450, 275 P. (2d) 736, 746, the Supreme Court of Washington stated:

"Johnson [the plaintiff] appeared on the witness stand and testified as to his age and the nature of his injuries. He further testified

---

[12]In addition to the instant case, see Zaikaner v. Small, 256 Minn. 275, 98 N. W. (2d) 247.

[13]See, 45 Va. L. Rev. 288 (recent case comment); and see, 43 Minn. L. Rev. 142.

[14]See, Yates v. Dann (D. Del.) 124 F. Supp. 125, modified on other grounds (3 Cir.) 223 F. (2d) 64, reaffirmed on issue of damages (D. Del.) 167 F. Supp. 174; Florida Greyhound Lines, Inc. v. Jones (Fla.) 60 So. (2d) 396; Rodgers v. Boynton, 315 Mass. 279, 52 N. E. (2d) 576, 151 A. L. R. 475; Rice v. Philadelphia Transp. Co. 394 Pa. 454, 147 A. (2d) 627; Bochar v. J. B. Martin Motors, Inc. 374 Pa. 240, 97 A. (2d) 813; Triangle Cab Co. v. Taylor (Tex. Civ. App.) 190 S. W. (2d) 755, affirmed, 144 Tex. 568, 192 S. W. (2d) 143; Johnson v. Howard, 45 Wash. (2d) 433, 275 P. (2d) 736; Kincannon v. National Ind. Co. 5 Wis. (2d) 231, 92 N. W. (2d) 884.

that he was unable to work as before the accident, and that after each work day he suffered from extreme fatigue. This evidence is sufficient to sustain a jury finding of diminished earning power."

If evidence of prior earnings, even though readily available, is unnecessary in the case of a workingman whose ability and capacity to earn in the future has been impaired, then in cases involving persons who have no previous record of earnings or whose past record would unnecessarily distort their future prospects, such evidence is even less important or necessary. To illustrate, the prior earnings of a retired person could have little, if any, relation to his future earning capacity. The past earnings of a college student from assorted jobs—many of which would be entirely unrelated to his future work—might have no bearing at all upon his earning capacity after graduation. The same is true of the prospective earning capacity of other persons who pursue courses of training or study in preparation for vocations or occupations which differ from the ones in which they are engaged at the time of injury and which are likely to produce greater income.[15] Perhaps the case of a housewife, which is essentially the one under consideration in the instant case, most clearly illustrates the point. In Florida Greyhound Lines, Inc. v. Jones (Fla.) 60 So. (2d) 396, 398, the court said:

"* * * [W]e are not primarily concerned with loss of earnings but with loss of power to earn. * * *

"* * * [I]t might well happen that a woman who has never earned a cent but has faithfully and successfully discharged her duties as a wife and mother would suddenly be faced, by the loss or disability of her mate, with the necessity to earn money to continue maintaining her home and rearing her brood. At any given time before such an emergency she might be wholly unable to prove she had produced a dime, though she might be qualified to expertness in some field or other. The lack of ability to 'carry on' because of some injury would immediately become a very real loss.

"* * * [T]he capability of a housewife that has been destroyed or impaired by the negligent act of another may not be ignored in

---

[15]See, Annotation, 15 A. L. R. (2d) 418.

assaying the damage, simply because she had not gathered money in some other activity. The measuring of the loss cannot be put off until another day. If she has been incapacitated, the time would never come for her to demonstrate what she could earn; and after all, there is but one trial—and that is now. We are convinced that the matter should be submitted to the jury as a phase of the damage, as difficult of appraisal as it may be."

We think that the distinction drawn by the Florida court is correct and proper. It is the distinction between a loss of earnings and the impairment of future earning capacity. Loss of earnings is an item of special damages. As such, the loss must be specifically pleaded and proved.[16] On the other hand impairment of earning capacity is an item of general damages. It permits recovery for a loss or diminution of the power to earn in the future and is based upon such factors as the plaintiff's age, life expectancy, health, habits, occupation, talents, skill, experience, training, and industry.[17] It is within the province of the jury to weigh all these elements and, guided by experience and common sense, to arrive at the proper monetary value of plaintiff's loss without recourse to his past earnings.

A careful reading of our prior opinions clearly discloses that where evidence of past earnings has been introduced, it has been done to establish a claim for special damages for loss of earnings rather than as proof of general damages occasioned by impairment of earning capacity.[18] Thus, in LeMay v. Minneapolis St. Ry. Co. 245 Minn. 192, 199, 71 N. W. (2d) 826, 831, where plaintiff, at the time of her injury, "was employed as a cosmetics salesgirl in a department store at approximately $200 per month" and was able to show a loss of earn-

[16]Rule 9.07 of Rules of Civil Procedure; cf. Dallas Consol. Elec. St. Ry. Co. v. Motwiller, 51 Tex. Civ. App. 432, 112 S. W. 794.

[17]Ahlstrom v. Minneapolis, St. P. & S. S. M. R. Co. 244 Minn. 1, 27, 68 N. W. (2d) 873, 889; and see, Person v. Sears, Roebuck & Co. 252 Minn. 110, 116, 89 N. W. (2d) 694, 698 (dissenting opinion).

[18]See, Fredhom v. Smith, 193 Minn. 569, 259 N. W. 80; Carlson v. Naddy, 181 Minn. 180, 232 N. W. 3; Stenshoel v. G. N. Ry. Co. 142 Minn. 14, 170 N. W. 695; Anderson v. Young, 98 Minn. 355, 108 N. W. 298; Dahlberg v. Minneapolis St. Ry. Co. 32 Minn. 404, 21 N. W. 545.

ings from the date of the accident to a time approximately 27 months later when she became pregnant and would have been required to discontinue working, we held:

"It was proper to show the wages plaintiff was reasonably certain of receiving from October 13, 1948, to January 1951 as an element for consideration in awarding lost earnings. * * * In addition, plaintiff may recover for loss of future earning capacity, even though presently she is performing only household duties and does not intend to resume gainful employment."

In the LeMay case we did not hold that plaintiff was required to introduce evidence of past earnings in order to recover for impairment of future earning capacity, and it appears clear that but for the Person case the plaintiff in the instant case would be entitled to recover for that impairment. In Rodgers v. Boynton, 315 Mass. 279, 281, 52 N. E. (2d) 576, 577, 151 A. L. R. 475, the court said:

"'* * * Her ability to work belonged to her; and if her capacity to work was lessened by her injury, then she alone was entitled to recover the value of that part of her capacity to earn of which she was deprived. Her time was her own. She had a right to work and her earnings belonged to her. * * * She was entitled to have considered in the assessment of her damages her inability, due to the injury, to perform her household duties, just as she would be entitled to have considered any other restriction, due to the injury, of her activities."

In the Person case plaintiff (252 Minn. 113, 89 N. W. [2d] 696) "prior to the accident and for some time thereafter, operated a roominghouse," and there was evidence of her ability to do general housework. By a divided court we held that she might not recover for loss of future earning capacity in the absence of evidence pertaining to the value of her services as a roominghouse operator or a general houseworker. In so holding we are now satisfied that we were in error. The Person case should be and now is expressly overruled.

Affirmed.

FRANK T. GALLAGHER, JUSTICE (concurring specially).

I concur specially in the results. However, I am of the opinion that in cases involving damages for loss or impairment of future earning

134

capacity evidence of the value of plaintiff's earning capacity prior to the injury should be required in all cases where such evidence is available and where the plaintiff's earning capacity is not of the type commonly known by the public. Such a rule tends to limit speculation on the part of the jury without imposing a difficult burden of proof upon the plaintiff.