## JOSIAH ANDERSON v. SEARS, ROEBUCK & COMPANY.[1]

November 1, 1946.

No. 34,204.

[1]Reported in 26 N. W. (2d) 355.

*E. Luther Melin,* for appellant.
*Fred A. Ossanna* and *Carl K. Lifson,* for respondent.

MATSON, JUSTICE.

In an action for damages for personal injuries, plaintiff appeals from a judgment entered pursuant to an order granting defendant's motion for a dismissal on the merits at the close of plaintiff's case when plaintiff had rested.

Shortly after five p. m. on September 9, 1944, plaintiff, a machinist of the approximate age of 75 years, entered defendant's automobile accessory department to purchase a car battery and carrying strap. After he had paid for his purchase, he was directed by defendant's salesman to call for the battery at a battery room located on the west side of an adjacent service room or garage located in the same building. On the same side as the entrance to the battery room and in front of it, a portion of the garage had been partially partitioned off as a display space for exhibiting tires, batteries, and

similar articles. The floor space used for these display purposes was six inches higher than the level of the floor in other parts of the garage. It was partially separated from the rest of the room by a six-inch riser in the concrete floor level and also by a display counter located flush with the edge of the floor riser and extending completely across the display space with the exception of a 23-inch passageway at one end. Directly above the counter and vertically on a line with the front side thereof and in line with the edge of the six-inch floor riser, a partition, extending from wall to wall, had been suspended from the ceiling down to within about three feet of the top of the counter. In passing to the door of the battery room, it was necessary to go through the 23-inch passageway at the end of the counter and to step from the lower to the higher floor level. The floor in the garage, inclusive of the elevated portion occupied for display purposes, was of concrete. The part of the riser under the counter was painted black. However, the portion at the end of the counter, in the 23-inch passageway, was not painted black, but, according to plaintiff, one could see on this portion a yellow and red spot here and there. According to plaintiff, the change in floor level had formerly been indicated in this passageway by having a yellow band painted across it at the edge of the stepdown on the higher floor level, but this had been worn and almost obliterated except for a four-inch remnant of the color band remaining on each side of the passageway. In other words, the upper level of the passageway floor at the edge of the riser was bare as to the middle 15 inches, but was flanked on each side by a four-inch patch of yellow color.

Upon his entry, plaintiff passed over the garage floor and through the 23-inch passageway. Athwart the passageway on the lower floor level, at a distance of two and one-half or three feet from the riser, stood a low-slung four-wheeled platform truck used for transporting merchandise from one part of the building to another. Plaintiff walked around the end of this truck and between it and the counter and without difficulty passed over the six-inch riser in the passageway to the upper floor level and thence to the battery

room. On his return he carried a battery weighing 41 pounds in one hand. As he again approached the passageway, he turned sideways in order to provide clearance for the battery he was carrying. Plaintiff contends that he had not at any time noticed the change in floor levels, and that as he stepped through the passageway over the edge of the riser to the floor level six inches below he was violently jerked and thrown off balance. As a result, he pitched forward, but saved himself from falling only by grabbing the crossbar and uprights attached to one end of the merchandise truck, which was still standing in the same position on the lower floor level. In pitching forward, however, he wrenched himself severely and sustained certain injuries, for which he claims damages in this suit. In front of plaintiff, as he approached the passageway just before he fell, were the following: The showcase, whose opaque doors in the back concealed the contents except for what could be seen through a small crack where one of the doors was slightly ajar; the suspended ceiling overhead; the hand truck immediately athwart the passageway; a trash truck or box on wheels to the right; and an automobile standing about 20 feet beyond on the garage service floor. Light came into the room from the outside through windows and also through large drive-in doors, equipped over the greater part of their area with numerous panes of glass. In addition to the natural light, there was illumination from a large number of overhead electric lights equipped with reflectors. Plaintiff testified that "it was a pretty bright day," and admits that the room was well lighted. He contends, however, that various objects such as the display counter cast shadows where he was walking.

▪■ The order of the trial court granting a dismissal on the merits removed the case from further consideration by the jury and was equivalent in effect to a directed verdict. This court has heretofore pointed out the undesirability of substituting a motion of dismissal on the merits for a motion for a directed verdict. McElroy v. Board of Education, 184 Minn. 357, 359, 238 N. W. 681, 682. Regardless of the error as to procedure, the matter was determined on its

merits, and we need only inquire if the decision of the trial judge is justified by the evidence as a matter of law.

■ Taking, as we must, the view of the evidence most favorable to plaintiff, we come to a consideration of whether the record discloses such a clear and conclusive want of negligence as to compel a directed verdict by the court as a manifest duty. Clearly, a shopkeeper is not an insurer of the safety of customers and is only liable for injuries resulting from his negligence. He is bound to exercise only reasonable care to keep his store premises in a reasonably safe condition for his customers and others whom he invites, expressly or impliedly, to enter on business with him. Smith v. Emporium Merc. Co. Inc. 190 Minn. 294, 251 N. W. 265; Dickson v. Emporium Merc. Co. Inc. 193 Minn. 629, 259 N. W. 375; Albachten v. The Golden Rule, 135 Minn. 381, 160 N. W. 1012.

■ The Albachten case involved a similar situation, and here, as there, we find no negligence or breach of any duty owed to plaintiff. In the Albachten case, the step or change in floor levels was in plain sight, and that is the situation here, where the premises were admittedly well lighted. The minor shadows cast by the display counter and similar objects could not reasonably rob plaintiff of his vision. A change in floor level in plain sight, standing by itself, without the intrusion of other material factors, is no evidence of negligence. There is no obligation to protect a customer against hazards which are known to the customer or which are so apparent that he may reasonably be expected to discover them and be able to protect himself. See, Prosser, Torts, p. 642. Here, the change in floor level was not merely in plain sight, but there were special factors present to put plaintiff and other invitees on their guard if they were proceeding with reasonable observation and care. The riser between the floor levels was indicated by the display counter, and beneath this display counter the riser was painted black to indicate the change in the level of the floor, which was of a different color. The black color terminated at the edge of the passageway, but in the passageway the riser was marked to some extent by "yellow and red" spots, and on the top-floor level the

passageway was flanked on each side by a four-inch patch of yellow. The change in floor levels was not merely in plain sight, but was indicated to a significant extent by an admittedly discernible change in color pattern. In fact, plaintiff found no trouble in mounting the six-inch step on his way to the battery room. The accident occurred on his return trip. The presence of the low-slung merchandise truck, standing as it did on a lower floor level, should, if anything, have indicated to plaintiff that a change in floor level was imminent.

■ Plaintiff contends, however, that, unlike the Albachten case, "distracting circumstances" were present to throw him off his guard. We find no distracting circumstances. An ordinary object such as a merchandise truck, found in its normal setting, can hardly be considered a source of distraction to a normal person. The trash box on wheels obviously falls into the same category. The automobile standing on the service floor, with its usual nickel or chromium trim, was something which one would normally expect to find wherever motor vehicles are serviced. The display counter involved nothing unusual to attract the attention of a customer; in fact its contents could not be seen by plaintiff, who was approaching it from its back side, which was opaque. There is no evidence that he saw anything of a distracting nature through the narrow aperture produced by one of the counter's back doors being slightly ajar. There is also no evidence that the top of the counter was covered by merchandise of a distracting character to absorb his attention. In fact, the entire setting involved nothing that could be said to excite anything more than an indifferent interest on the part of plaintiff.

"A merchant must have a place to store his goods, and counters and display platforms upon which they may be displayed. He must have scales upon which to weigh them and trucks with which to move them. When such appliances are not placed so as to threaten danger to those visiting the store on business, and are in full sight and within the observation of every one, the merchant is not liable for accidents which result from carelessness and inattention to the

surroundings." 4 Shearman and Redfield, Negligence (Rev. ed.) § 780.

Breach of duty such as to constitute negligence in the keeping of the premises reasonably safe is not proved by the mere occurrence of an accident.

■ The direction of a verdict by the court (or, as in the instant case, the equivalent action of ordering a dismissal on the merits) does not impair the constitutional right to a trial by jury. Kernan v. St. Paul City Ry. Co. 64 Minn. 312, 67 N. W. 71; 6 Dunnell, Dig. § 9764.

■ Plaintiff contends that the trial court was without power to entertain defendant's motion for a dismissal on the merits. At the time the motion was made, plaintiff, but not defendant, had rested. Whether the trial court was in fatal error in entertaining a motion of dismissal on the merits at a time when both parties had not rested involves an issue that is not properly before this court for review. The exception taken by plaintiff to the ruling of the trial judge was directed not to the propriety of defendant's motion as a matter of procedure, but to the ruling of the court on the merits under the motion. The exception was directed solely and expressly to the correctness of the court's ruling on the merits, and not to the validity of the motion itself. It is true that an exception need not be taken in any particular form. Nevertheless, it must be sufficiently specific to apprise the trial judge of the nature of the error in respect to which the exception is taken. In the absence of a proper exception, a review may be obtained of a ruling or order of the trial court by *clearly specifying the alleged error in the notice of motion for a new trial.* See, Minn. St. 1945, § 547.03, subd. 1.[2] Plaintiff's notice of motion contains no such clear specification of alleged error. In the absence of an exception, no issue comes before this court for review unless the alleged error is clearly specified in the notice of motion for a new trial. Ranum v. Swenson, 220 Minn. 170, 178, 19 N. W. (2d) 327, 332; 5 Dunnell, Dig. & Supp. § 7091; 1 *Id.* § 358a; Minn. St. 1945, § 547.03, subd. 1.

2See, M. S. A. § 547.03, subd. 1, and cf. Mason St. 1927, § 9327.

8

The judgment appealed from is affirmed.

Affirmed.

