# GERALD LeMAY AND ANOTHER v. MINNEAPOLIS STREET RAILWAY COMPANY AND ANOTHER.[1]

July 1, 1955.

Nos. 36,474, 36,475.

---

[1]Reported in 71 N. W. (2d) 826.

*Cronan, Barto, Roseen, Welsh & Castor* and *David K. Wendel,* for appellant.

*Hvass, Weisman, Peterson, King & Schwappach,* for plaintiffs-respondents.

*Samuel D. Finkelstein,* for defendant-respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeals from judgments of the district court in favor of plaintiffs in two actions consolidated for trial and on appeal. Phyllis LeMay brought an action to recover for personal injuries, and her husband, Gerald LeMay, brought an action for derivative damages.

Phyllis LeMay, referred to hereinafter as plaintiff, was injured in an accident which occurred at about 6:11 p. m. on October 13, 1948, on the south crosswalk of the intersection of Emerson avenue north and Twenty-ninth avenue north in Minneapolis. Emerson avenue runs generally north and south, and Twenty-ninth avenue runs generally east and west, intersecting Emerson avenue at right angles.

According to plaintiff's testimony, she alighted from a northbound streetcar at the southeast corner of the intersection and walked east to the curb at that corner. It was dark, and an overhead street light illuminated the intersection. As she reached the curb, she turned toward the street and looked south. She observed a northbound automobile about a quarter of a block away, which was traveling at about 15 miles per hour and was slowing down. She also observed the lights of some traffic about a block south. The northbound automobile stopped for plaintiff, and she began to cross Emerson avenue by going west. As she started to walk, plaintiff looked to the north up Emerson avenue and saw a southbound streetcar about a quarter of a block away approaching the intersection.

She said that she continued to watch the streetcar and that she stopped when she reached the west rail of the northbound streetcar tracks. She further said that the streetcar stopped in the middle of the intersection and that she then began to walk forward and west to finish crossing Emerson avenue. She claims that, as she reached the east rail of the southbound streetcar tracks, the streetcar suddenly started and that she jumped back to avoid it. As she did so, she was struck by the side of an automobile driven by Bruce L. Timmers, although at that time plaintiff did not know what had hit her.

The streetcar company concedes that the streetcar slowed down or came to a stop at about the center of the intersection, although its motorman testified that he had not brought the streetcar to a full stop. He said that he slowed down as he approached the intersection and that, while he was still on the north side of the intersection, he first observed plaintiff standing between the northbound tracks in the south crosswalk; that he proceeded through the intersection at about seven or eight miles per hour; and that plaintiff remained standing as he passed her. He testified that he saw the Timmers automobile for the first time, approaching from the south about 40 feet away, when the streetcar was just a little south of the intersection. He claimed that the Timmers car went around the other car which had pulled to the curb and that, in about two seconds after the cab of the streetcar had passed plaintiff, he heard a bump. Upon hearing the noise, he stopped the streetcar, got out, and learned that plaintiff had been struck by the Timmers car.

Timmers testified that he was driving north on Emerson avenue with a passenger, Bernard Aydt, at a speed of about 25 miles per hour. He said that when he was about at the intersection he saw a car some two car lengths ahead in his northbound lane and that he swerved to the left to avoid it. That car was the one which previously had stopped at the intersection before plaintiff began to cross Emerson avenue. Timmers said that, as he swerved to the left onto the northbound streetcar tracks in his lane, he saw the streetcar and turned back to the right a little and that, as he did so, he felt a thud

against his automobile on the left side near the driver's door. He testified that he immediately pulled over to the curb and ran back to the intersection, where he found plaintiff lying injured.

Bernard Aydt, the passenger in the Timmers automobile, said that, when the Timmers car was three-fourths of a block south of the intersection, he saw the southbound streetcar and that, before the accident occurred, he saw the streetcar come to a stop in the middle of the intersection as plaintiff was crossing Emerson avenue. He testified:

"Q. When the streetcar stopped in the middle of the intersection, what did this lady do?

"A. At the time she was walking in the intersection and I believe she stopped and started walking again and then the streetcar started at the same time and she jumped back."

Aydt's testimony was not consistent with a statement allegedly given to the streetcar company by him after the accident in which he stated, among other things:

"* * * I never did see the woman, nor do I remember this auto driver [Timmers] going around another Northbound auto."

Considerable controversy arose over this statement inasmuch as Aydt testified that he first observed plaintiff when she was walking in the intersection. He claims that she stopped, then started forward after the streetcar was stopped, and that, as she started walking forward, the streetcar started up suddenly and she jumped back. On cross-examination, Aydt was shown the statement and was asked to read it over carefully. When this was done, he acknowledged that the statement was the one he had given the streetcar company. He was asked if what was said in the statement was true or false, and he replied: "My statements are just about the same." The exhibit was then offered and received in evidence for the purpose of impeaching the witness.

It appears that after Aydt left the stand he returned to the courtroom after court hours; that he examined the exhibit again; and that he claimed that any handwriting, other than that contained in

the signature, telephone number, his address, and business address, was not his handwriting. The streetcar company contends that counsel for plaintiff was guilty of prejudicial conduct in his final argument when he argued that apparently the writing on the front page of the exhibit was that of a claims man for the company and that someone at the streetcar company mailed the statement to Aydt. Counsel then went on to say that apparently on the same day Aydt filled in his signature, telephone number, home address, city, state, and date.

■ We have examined the record carefully in connection with this exhibit, and, while we do not like the variance between Aydt's testimony that he saw plaintiff and his signed statement that he did not see her, we are forced to the conclusion that the credibility of the witness under the circumstances here was a matter for the jury to consider. It further appears that one of the principal purposes served by his testimony was to corroborate plaintiff's testimony that the streetcar had come to a full stop in the middle of the intersection, and on appeal the streetcar company has conceded that it did stop. We therefore conclude that the argument by counsel for plaintiff with respect to this statement could not be sufficiently prejudicial to warrant a new trial.

■ Other legal questions raised in connection with the assignments of error are whether the trial court erred in denying the streetcar company's motion for a directed verdict at the close of the testimony or in submitting in its charge the emergency rule pertaining to plaintiff and the right-of-way rule, or in submitting the issue of plaintiff's future earning capacity as an item of damages; also whether the verdict was justified by the evidence and whether the damages were so excessive as to indicate that they were given under the influence of passion and prejudice.

The streetcar company moved for a directed verdict at the close of all the testimony on the grounds that plaintiff had failed to prove negligence on its part and that plaintiff was guilty of contributory negligence as a matter of law; that, even though the streetcar com-

pany were found negligent, such negligence was not the proximate cause of the accident; that under the facts of the case plaintiff could not have acquired any right of way over the streetcar; and that, in any event, the negligence of Timmers intervened between any claimed negligence on the part of the streetcar company. The motion was denied. The jury returned verdicts for the LeMays against the streetcar company and for Timmers. No motion for a new trial was made by the streetcar company, and judgments were entered against it on June 5, 1954. The streetcar company appealed from the judgments on July 7, 1954. On August 19, 1954, it served an amended notice of appeal to include Timmers, although the judgment in favor of Timmers was not entered until October 18, 1954. Thus, the only judgments before us on this appeal are the ones against the streetcar company. Timmers argues that the appeal of the streetcar company insofar as he is concerned should be dismissed.

Plaintiff contends that, on an appeal from a judgment where no motion for new trial has been made, as in this case, the scope of review is limited to the question whether the verdict is supported by the evidence and that in such an appeal this court will not consider any errors assigned which relate to trial procedure, the introduction and exclusion of evidence, and the like. The reasons advanced by plaintiff for this view are that failure to move for a new trial in the lower court amounts to an agreement with the rulings of the lower court and a waiver of all assignments of error which might be made in a motion for a new trial. In support of this view plaintiff cites Ciresi v. Globe & Rutgers F. Ins. Co. 187 Minn. 145, 244 N. W. 688; Hagen v. Bowers, 182 Minn. 136, 233 N. W. 822; Smith v. Gray Motor Co. 169 Minn. 45, 210 N. W. 618. See, also, Olson v. Mullen, 244 Minn. 31, 68 N. W. (2d) 640.

Other cases seem to hold the opposite. De Blois v. G. N. Ry. Co. 71 Minn. 45, 73 N. W. 637; Arnoldy v. Northwestern State Bank, 142 Minn. 449, 172 N. W. 699; Peterson v. Township of Manchester, 162 Minn. 486, 203 N. W. 432; Lundblad v. Erickson, 180 Minn. 185,

230 N. W. 473; Winning v. Timm, 210 Minn. 270, 297 N. W. 739; Wendelsdorf v. County of Martin, 220 Minn. 614, 20 N. W. (2d) 528.[2]

While our decisions are not uniform as to what may be reviewed on an appeal from a judgment where there has been no motion for a new trial, we have decided to review the assigned errors in this case inasmuch as we believe that, even by so doing, the result will be the same as if we did not make the review.

■ The streetcar company argues that the court erred in instructing the jury on the right-of-way rule and the sudden-emergency rule. In view of the company's concession on appeal that its streetcar had stopped in the middle of the intersection, it became a question of fact whether plaintiff or the streetcar was the first to start forward after each had stopped for the other. Viewing the evidence in the light most favorable to plaintiff, the prevailing party below, there is evidence to support a finding by the jury that plaintiff was the first to move forward after the streetcar stopped. And assuming that the jury could so find, it is clear that the court properly charged the jury as to the right-of-way rule and also the sudden-emergency rule. Even in the absence of the company's concession that the streetcar stopped, the testimony on that issue presented a conflict which the jury could have resolved in favor of either side, and clearly the court's instructions to the jury under the facts of this case properly included the right-of-way rule and the sudden-emergency rule. See, LeVasseur v. Minneapolis St. Ry. Co. 221 Minn. 205, 21 N. W. (2d) 522; Wright v. Minneapolis St. Ry. Co. 222 Minn. 105, 23 N. W. (2d) 347. This also disposes of the street-

---

[2]See American Engine Co. v. Crowley, 105 Minn. 233, 239, 117 N. W. 428, 431, and Anderson v. Sears, Roebuck & Co. 223 Minn. 1, 7, 26 N. W. (2d) 355, 359, where the court stated that, in the *absence* of a proper exception, a review of a ruling or order of the trial court may be obtained by clearly specifying the alleged error in the notice of motion for new trial.

In Hefferen v. N. P. R. Co. 45 Minn. 471, 48 N. W. 1, 526, and Le Mieux v. Cosgrove, 155 Minn. 353, 193 N. W. 586, the court reviewed errors excepted to at the trial and assigned as error on appeal from a judgment in a jury case even though there was no motion for new trial, although the question of the scope of review was not raised.

car company's assignment of error regarding the denial of its motion for a directed verdict.

█ The streetcar company further contends that the trial court erred in instructing the jury that it might consider plaintiff's loss of future earning capacity as an item of damages. Medical testimony by plaintiff's doctor established that, in addition to other injuries only temporary in nature, plaintiff suffered a traumatic amputation of the first, second, and part of the third toes on her right foot; that is, those toes were smashed and amputated by a crushing injury rather than by a sharp clean separation. As a result of the traumatic amputation of her toes, plaintiff suffered severe injury to the tissues of her right foot and developed neuromata, which are little tumors at the ends of the nerves. According to the testimony of plaintiff's doctor, neuroma may cause pain for a long time and may result in permanent pain. In plaintiff's case, she is unable to put any weight on the ball of her right foot and has difficulty in standing on her foot for any long period of time. She also suffered a severe cerebral concussion of the brain and a basal skull fracture, which resulted in permanent brain damage. She has continuous dull aching pains in her head, and, when she attempts to bend over, she becomes dizzy and sometimes nauseated. The streetcar company does not dispute the fact that these injuries are permanent. It urges, however, that the permanent injuries were not connected by the doctor to any future loss of earning capacity and, therefore, that the jury had no basis upon which to determine any such loss and could only speculate in awarding damages therefor.

Plaintiff was able to show a loss of earnings from the date of the accident until January 1951, at which time she was pregnant and would have discontinued working. The record reveals that at the time of the accident she was employed as a cosmetics salesgirl in a department store at approximately $200 per month. Further, the record shows that after January 1951 she resumed the duties of a housewife and at present intends to continue that vocation.

It was proper to show the wages plaintiff was reasonably certain of receiving from October 13, 1948, to January 1951 as an element for consideration in awarding lost earnings. See, Blacktin v. Mc-

Carthy, 231 Minn. 303, 42 N. W. (2d) 818. In addition, plaintiff may recover for loss of future earning capacity, even though presently she is performing only household duties and does not intend to resume gainful employment. Rodgers v. Boynton, 315 Mass. 279, 52 N. E. (2d) 576, 151 A. L. R. 475; Marshall v. Smith, 131 Cal. App. 258, 21 P. (2d) 117.

In Stenshoel v. G. N. Ry. Co. 142 Minn. 14, 16, 170 N. W. 695, 696, we said:

"* * * Though technically the plaintiff lost no wages, for she was getting none, it was proper for the jury in fixing her damages to take into consideration her earning capacity, what her services were worth, and the loss or decrease of her ability to continue for a time any performance, or the full performance, of such services."

In Marshall v. Smith, 131 Cal. App. 258, 261, 21 P. (2d) 117, 118, the California court stated:

"* * * the impairment of the ability of a woman to work is an injury to her personal rights wholly apart from any pecuniary benefit the exercise of such power may bring, and if her injury has lessened this power she ought to be able to recover damages therefor regardless of whether she was engaged in household duties or employed for pecuniary gain."

Damages for loss of future earning capacity to a married woman should not be increased or decreased merely by the fact of coverture. In Ahlstrom v. Minneapolis, St. P. & S. S. M. R. Co. 244 Minn. 1, 68 N. W. (2d) 873, we pointed out that damages for total loss of future earning capacity should be predicated upon a person's future earning power and his age, skill, training, and experience; that his industry also should be considered; and that proof of specific pecuniary loss is not essential. In connection with the last item mentioned, the distinction to be noted is that the award is given for diminution or loss of future earning capacity, even though the award may be nothing more than a computation of wages. Southern Coach Lines, Inc. v. Wilson, 31 Tenn. App. 240, 214 S. W. (2d) 55.

In the case at bar, by uncontradicted testimony plaintiff proved that she was subject to dull headaches and spells of dizziness when

she attempted to bend over and that she was unable to put much weight on the ball of her right foot for any length of time without considerable pain. Her doctor testified that in his opinion these conditions were permanent, and defendant did not call any medical witnesses to testify. In many cases the injuries are of such nature that their duration, extent, and the consequences thereof are beyond the knowledge of the layman unskilled in medical knowledge, and it is necessary to show those matters by expert witnesses. But here a medical expert testified that the injuries and the resulting consequences were permanent in nature, and the effect of those injuries on plaintiff has been shown. This was an adequate foundation upon which to instruct the jury as to damages for loss of future earning capacity; and even though the extent to which plaintiff's earning capacity was diminished would be a proper matter for proof by expert testimony, we cannot say under the record here that in the absence of such testimony the jury was unable to determine the diminution in plaintiff's earning capacity.

Since the judgments appealed from must be affirmed, we find it unnecessary to consider the motion of defendant Bruce L. Timmers to dismiss the appeals as to him. Flemming v. Thorson, 231 Minn. 343, 43 N. W. (2d) 225.

Judgments affirmed.

DELL, CHIEF JUSTICE (concurring).

I concur in the result.