# LAURA JOHNSON AND ANOTHER v. R. E. TAPLEY, INC., AND ANOTHER.

136 N. W. (2d) 538.

July 23, 1965—No. 39,654.

*Donohue & Donohue,* for appellants.

*Field, Arvesen, Donoho & Lundeen* and *A. C. Carmichael,* for respondents.

Otis, Justice.

Plaintiffs have recovered damages against defendants for injuries sustained by Mrs. Johnson when she fell while leaving defendants' store in the village of Wadena. Defendants appeal from the judgment.

On June 16, 1962, shortly before noon, Mrs. Johnson entered defendants' store and bought one or two small items in the period of approximately one-half hour. She departed by the same door she had used to en-

ter, carrying a handbag and one package containing her purchases. As she reached the sidewalk, she missed a 5½-inch step and fell from a cement slab constructed in such a manner that its surface extended 2 feet from one of the double doors and 3 feet from the other, tapering in a V shape from the doorway in either direction to the end of the display windows facing the sidewalk. The entrance is depicted in the accompanying cut.

There are two issues for consideration, first, whether the evidence sustains plaintiffs' theory of where the accident occurred; and second, whether the display windows at the entrance constituted a distraction which excused Mrs. Johnson's failure to see the step from which she fell.

■ The theory advanced by plaintiffs and adopted by the trial court would permit the jury to find Mrs. Johnson was not injured while departing directly through the door to the sidewalk, but that she walked along the elevated slab of cement, which tapered to the corner of the window, while distracted by the display facing the street. In denying the defendants' motion for a directed verdict, the trial court observed that the "illegitimate construction existing in front of the doors, plus the display windows placed there by defendants" combined to create a jury question as to defendants' negligence. In a postverdict memorandum, the court stated that the question of liability hinged on the concurrent effect of three factors: The step from the public sidewalk; the unusual tapering design of the concrete platform; and the distraction of the window displays.

We have scrutinized the record and hold that the evidence does not support a finding that Mrs. Johnson fell from the tapered portion of the elevated walkway. Testimony on the part of one of the defendants that Mrs. Johnson was found on the sidewalk directly in front of the door, corroborated by her own statements, compels this conclusion. At various times during the trial, plaintiff testified as follows:

"A.   Well, I just walked out and was looking at the business display in the window like, as I just left right straight out.

"Q.   I see. And did you continue to walk out toward the sidewalk from the door of the store?

"A.   Yes.

"Q.   What was the next thing that happened?

"A.   I fell.

"Q.   And when you left did you come out the same door?

"A.   Well, I thought I did.

"Q.   Was the door open or closed as you approached it from the inside?

"A.   I thought it was open.

"Q.   And you walked directly toward the sidewalk?

"A.   I thought I did.

"Q.   Yes. So that would be you walked right straight out from the door?

"A.    I was looking at the display window so I—

"Q.    I understand, but my question was, isn't it a fact that you walked straight out the door towards the walk?

"A.    Well, I couldn't say for certain.

\*  \*  \*  \*  \*  \*

"Q.    \* \* \* Do you have any recollection, Mrs. Johnson, of doing anything other than walking straight out from the door towards the walk?

"A.    I was looking at the display windows. I don't know whether I walk directly—the other door looked just level—right straight out.

"Q.    You don't know just exactly what you did, is that it?

"A.    Well, I wouldn't know.

\*  \*  \*  \*  \*

"Q.    And you don't know on what part of the approach that you were walking?

"A.    I was walking close to the window."

The fact that Mrs. Johnson testified she was walking "close to the window" as she left the store is not inconsistent with her testimony that she walked "right straight out," since the display windows were immediately adjacent to and on either side of the doorway. There is no evidence whatever that she fell while walking parallel to the windows which faced the street. The conclusion is inescapable that she did indeed walk straight out the front door without seeing the step. We therefore hold as a matter of law that plaintiffs have failed to prove by a fair preponderance of evidence that the tapering design of the entranceway caused her injury.

■    The remaining issue is whether, in the absence of faulty design which proximately caused the accident, there was evidence from which the jury could otherwise find defendants liable.

It is undisputed that Mrs. Johnson left by the same route she entered. The elevated slab was painted maroon or red and contrasted sharply with the color of the public sidewalk. When Mrs. Johnson departed, she said the door was open and that she looked straight ahead toward the sidewalk. It was about the hour of noon, and the day was clear and bright. There is no question but that she would have seen the step had she looked. The

issue narrows then to whether or not the display window constituted a distraction which relieved Mrs. Johnson of fault.[1]

Absent other factors, such as poor illumination or noncontrasting colors, ordinary changes in elevation do not excuse the failure to see what is in plain sight.[2] Two cases dealing with the problem deserve comment. In Lincoln v. Cambridge-Radisson Co. 235 Minn. 20, 23, 49 N. W. (2d) 1, 3, the plaintiff was injured when she fell from a step adjacent to a cashier's stand in a coffeeshop at a moment when she extended her hand to pay the check. In sustaining a verdict against the property owner, we held that a jury could find plaintiff had been distracted by her concentration on the cashier; that a warning sign was not visible as she approached; and her view of the steps was obstructed by an abutment in the wall and by plants bordering the passageway. The Radisson case may be distinguished from the case at hand by the proximity of the step to the place where plaintiff was expected to transact her business and by the obscured visibility of the change in elevation.

More nearly in point is the case of Anderson v. Sears, Roebuck & Co. 223 Minn. 1, 26 N. W. (2d) 355. Anderson was a business invitee who was injured in a fall from a 6-inch step in defendant's automobile accessory department. There, as here, the change in floor levels was visible and was indicated by a discernible change in color pattern which gave plaintiff no trouble when he first entered the area. While there was no merchandise of a distracting character to absorb plaintiff's attention, there was an automobile standing on the service floor, a merchandise truck, and a trash box on wheels in plaintiff's line of vision as he approached the step. What we there said has equal application to the instant case. Defendants were not obliged to anticipate that the mere fact Mrs. Johnson had to pass display windows as she left defendants' store would "excite anything more than an indifferent interest on the part of plaintiff." 223 Minn. 6, 26 N. W. (2d) 358. In Anderson we quoted with approval the rule that

---

[1] Ober v. The Golden Rule, 146 Minn. 347, 349, 178 N. W. 586; Johnson v. Brand Stores, Inc. 241 Minn. 388, 393, 63 N. W. (2d) 370, 373; Dukek v. Farwell, Ozmun, Kirk & Co. 248 Minn. 374, 379, 80 N. W. (2d) 53, 56.

[2] Flynn v. Arcade Investment Co. 253 Minn. 107, 110, 91 N. W. (2d) 113, 115.

the presence of counters and display platforms does not in itself give rise to liability on the part of a merchant for accidents which result from carelessness and inattention to surroundings.

Where, as here, plaintiff enters and leaves by the same doorway and a change in elevation of 5½ inches is in plain sight and conspicuously marked by distinguishing colors under natural illumination on a clear day at the hour of noon, and plaintiff is neither burdened by packages nor preoccupied with opening or shutting the door, her inattention to where she is proceeding cannot be excused by such a relatively trivial distraction as the existence of display windows which she passes as she leaves, more particularly when she has already finished her shopping on the premises from which she is departing.[3] It was therefore error to deny the defendants' motion for a directed verdict.

Reversed and judgment ordered for defendants.

---

[3] Cates v. Evans (Mo. App.) 142 S. W. (2d) 654; see, Smith v. Epstein Realty Co. 133 Neb. 842, 277 N. W. 427.