MIDWAY NATIONAL BANK OF ST. PAUL, as Trustee and Conservator for Nancy Bollmeier, Respondent (C3–92–2203, C9–92–2206, C5–92–2221), Appellant (C2–93–498),

v.

The ESTATE OF Emil Wayne BOLLMEIER, Respondent (C3–92–2203, C9–92–2206), Appellant (C5–92–2221, C2–93–498),

Dynex Research, Inc., et al., Defendants (C3–92–2203, C9–92–2206, C5–92–2221), Respondents (C2–93–498),

and

State Farm Mutual Automobile Insurance Company, Intervenor, Respondent (C3–92–2203, C5–92–2221, C2–93–498), Appellant (C9–92–2206),

State Farm Fire and Casualty Company, Intervenor, Respondent (C3–92–2203, C5–92–2221, C2–93–498), Appellant (C9–92–2206),

Richard Langlais as Personal Representative of the Estate of Emil Wayne Bollmeier, Intervenor, Appellant (C3–92–2203), Respondent (C9–92–2206, C5–92–2221, C2–93–498).

Nos. C2–93–498, C5–92–2221, C3–92–2203 and C9–92–2206.

Court of Appeals of Minnesota.

July 27, 1993.

William D. Harper, Harper & Harper, Eagan, Mary Mason, St. Paul, for Midway National Bank of St. Paul, as Trustee and Conservator for Nancy Bollmeier.

Martha K. Sieber, Lee I. LaBore, LaBore & Guiliani, Hopkins, for Estate of Emil Wayne Bollmeier.

Eric J. Magnuson, Rider, Bennett, Egan & Arundel, Minneapolis, for Dynex Research, Inc., et al.

Kay Nord Hunt, Phillip A. Cole, Lommen, Nelson, Cole & Stageberg, Minneapolis, for State Farm Mut. Auto. Ins. Co.

Roderick D. Blanchard, Meagher & Geer, Minneapolis, for State Farm Fire and Cas. Co.

Charles E. Lundberg, Kevin P. Keenan, Bassford, Heckt, Lockhart, Truesdell & Briggs, Minneapolis, for Richard Langlais as Personal Representative of the Estate of Emil Wayne Bollmeier.

Considered and decided by NORTON, P.J., and SCHUMACHER and PETERSON, JJ.

## OPINION

PETERSON, Judge.

A jury awarded Nancy Bollmeier over $2.4 million in a personal injury action against the estate of Emil Wayne Bollmeier. State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company, and Richard Langlais, the estate's personal representative, filed motions to intervene and to vacate the judgment as void for lack of jurisdiction based on the failure to properly substitute the estate's personal representative for the decedent as the defendant in the action. The trial court allowed the intervention but denied the motions to vacate. The estate, the insurance companies, and Langlais, as personal representative for the estate, appeal from the trial court's denial of the motions to vacate the judgment.

The estate also claims on appeal that the trial court erred by allowing expert testimony on Nancy Bollmeier's loss of earning capacity and need for a life care plan. The insurers and the estate challenge the validity of a settlement agreement entered into between Nancy Bollmeier and Dynex Research, Inc. and C–Tek. Nancy Bollmeier appeals from the trial court's denial of her motion to amend the complaint to substitute Langlais, in his capacity as personal representative, for the estate as the named defendant in the personal injury action. We affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

## FACTS

Nancy Bollmeier was injured in an automobile accident on January 3, 1986. She was riding as a passenger in her own car, which her husband, Emil Wayne Bollmeier (Wayne Bollmeier), was driving home from a business trip. Through her conservator, Midway National Bank, Nancy Bollmeier brought a personal injury action against her husband and his employers, C–Tek and Dynex Research, Inc.

Wayne Bollmeier tendered the defense of the lawsuit to his three liability insurers: State Farm Mutual Automobile Insurance Company (State Farm Auto); State Farm Fire and Casualty Company (State Farm Fire) (collectively State Farm); and Hartford Fire Insurance Company (Hartford). State Farm Auto insured the Bollmeier's vehicles while State Farm Fire insured Wayne Bollmeier for personal liability. Hartford provided automobile liability coverage for Dynex and C–Tek.

Wayne Bollmeier died on September 9, 1989. On November 29, 1989, the personal injury action came on for trial. Attorney Lee LaBore, who had been retained by State Farm Auto with the consent of the other insurance companies to represent Wayne Bollmeier, brought a motion to dismiss the case because Wayne Bollmeier had died and no party had been substituted in his place. Nancy Bollmeier's attorney, William Harper, made an oral motion to substitute the estate as the defendant. LaBore objected to the substitution on the ground that the estate or its personal representative had not been notified of the estate's right to have its own attorney participate in the defense. Harper stated the attorney for the estate was present and prepared to go forward with the trial. The trial court granted Harper's motion. During the same sequence of events, Richard J. Langlais identified himself on the record as the personal representative of the estate and a member of the firm representing the estate. The case was then tried to a jury with LaBore acting as counsel for the estate. The issue of invalid service was not raised until almost three years after the trial.

In denying the motions to vacate for lack of jurisdiction, the trial court made the following findings:

Langlais, an attorney and the personal representative of the estate of Emil Wayne Bollmeier, was present on the day of trial at the time of the hearing on pretrial motions. During the motions, it was represented to the court in Langlais' presence that Langlais was prepared to go forward with trial. The accuracy of that representation was not challenged.

During an in-chambers discussion on an evidentiary issue, LaBore referred to Langlais as his client and as a named party. He also stated he had discussed the testimony with his client. Langlais admits being present during trial.

During trial, Harper stated on the record that he was involved in settlement negotiations with Hartford. At the close of evidence, Nancy Bollmeier moved for a directed verdict against C–Tek and Dynex on the issue of vicarious liability. The trial court granted the motion. Because of the directed verdict, only Wayne Bollmeier's negligence was submitted to the jury for consideration. C–Tek and Dynex were not included on the special verdict form. While the jury was deliberating, Nancy Bollmeier reached a settlement with C–Tek, Dynex and their insurer, Hartford. LaBore did not learn about the settlement until March 1992.

At trial, Dr. Peter Deutsch, a rehabilitation consultant, testified about Nancy Bollmeier's projected life care system. Deutsch is a rehabilitation psychologist who works with people who have suffered catastrophic injuries. He has a bachelor's degree in psychology, a master's degree in rehabilitation counseling with a minor in behavioral psychology, and a Ph.D. in counseling psychology with a minor in rehabilitation counseling and a subspecialization in severe orthopedic disabilities. As part of his job, Deutsch evaluates patients' rehabilitation needs, then develops and helps to implement life care plans for them. Deutsch prepares about 200 to 225 life care plans per year. In developing a life care plan, Deutsch relies on medical records and other health-related professional reports, psychological and neuropsychological testing reports, and other relevant background data. He may or may not directly interview the patient.

Dr. William Hunter, a vocational psychologist, testified about Nancy Bollmeier's loss of future earning capacity. LaBore argued the evidence was speculative because Nancy Bollmeier had not worked outside the home since she married Wayne Bollmeier in 1972, and there was no evidence that she had plans or any desire to return to work. In response to Hunter's testimony, LaBore sought to introduce evidence concerning Nancy Bollmeier's financial circumstances. The trial court did not allow the evidence, which was offered to show it would have been unlikely that Nancy Bollmeier would have sought employment.

After the trial court granted Nancy Bollmeier's motion for a directed verdict

against C–Tek and Dynex on the issue of vicarious liability, Nancy Bollmeier entered into a settlement agreement with C–Tek and Dynex. The settlement agreement with C–Tek, Dynex, and their insurer, Hartford, provided:

> Midway National Bank of St. Paul, as Trustee and Conservator for Nancy Bollmeier, agrees to:
>
> 1. Dismiss, without prejudice, the claims against Dynex and C–Tek currently pending in the Action, and covenant and agree never in the future to sue C–Tek or Dynex, their officers, employees, agents, successors, subsidiaries, or assigns for any and all claims arising out of the accident of January 3, 1986.

The settlement provided for a $500,000 loan to be paid back when and to the extent judgment was collected from State Farm.

## ISSUES

I. Did the trial court err in denying the motions to vacate the judgment against the estate for lack of jurisdiction based on the failure to properly substitute the estate's personal representative for the decedent as the defendant in the action?

II. Did the trial court err in allowing the testimony of Deutsch and Hunter?

III. Did the trial court err in determining that State Farm was not prejudiced by the settlement agreement between Nancy Bollmeier and C–Tek and Dynex and that the money Nancy Bollmeier received pursuant to the settlement agreement was not a collateral source?

## ANALYSIS

### I.

A motion to vacate a judgment for lack of jurisdiction under Minn.R.Civ.P. 60.02(d) involves no question of discretion. *Hengel v. Hyatt*, 312 Minn. 317, 318, 252 N.W.2d 105, 106 (1977). If the judgment is void for lack of jurisdiction, it must be set aside. *Id.*, 252 N.W.2d at 106.

Minn.R.Civ.P. 25.01(a) sets forth the procedure for substitution when a party dies while a lawsuit is pending.

> If a party dies and the claim is not extinguished or barred, the court may order substitution of the proper parties. The motion for substitution may be made by the successors or representatives of the deceased party or by any party and, together with the notice of hearing, shall be served * * * upon persons not parties in the manner provided in Rule 4 for service of process.

*Id.* A cause of action against a decedent survives as against the personal representative of his estate. Minn.Stat. § 573.01 (1988); *Wood v. Martin*, 328 N.W.2d 723, 725 (Minn.1983). It is undisputed that Langlais, the personal representative for Wayne Bollmeier's estate, was not a party to the action and was not served pursuant to Minn.R.Civ.P. 4.

Because Langlais was not served, we must determine whether he submitted himself to the trial court's jurisdiction by his actions during trial.

> A party who takes or consents to any step in a proceeding which assumes that jurisdiction exists or continues has made a general appearance which subjects him to the jurisdiction of the court.

*Slayton Gun Club v. Town of Shetek*, 286 Minn. 461, 467, 176 N.W.2d 544, 548 (1970), *quoted in Wachsmuth v. Johnson*, 352 N.W.2d 132, 133 (Minn.App.1984).

During the hearing on the motion for substitution, LaBore stated that the estate had the right to have its attorney participate in the defense. Harper responded that the attorney for the estate was prepared to go forward with trial. During the same chain of events, Langlais identified himself on the record as the personal representative of the estate and a member of the law firm representing the estate.

The record supports the trial court's finding that Langlais was present during the hearing on the motion for substitution. By failing to challenge Harper's statement and then identifying himself on the record as the personal representative and a member of the firm representing the estate, Langlais, in his capacity as personal represen-

tative, tacitly consented to LaBore's representation.

Langlais' consent to LaBore's representation is also shown by LaBore's references to Langlais as his client and as the named party during the course of the trial. Also, on at least one occasion, LaBore specifically stated he had discussed an evidentiary matter with Langlais. Although LaBore's actions cannot form the basis for the trial court's assertion of jurisdiction over Langlais, LaBore's statements are evidence of Langlais' consent to LaBore's representation.

In consenting to LaBore's representation and allowing him to proceed through trial, Langlais assumed personal jurisdiction existed, thereby submitting to the trial court's jurisdiction. *See Slayton*, 286 Minn. at 463, 467, 176 N.W.2d at 546, 548 (defendant who was physically present and represented by counsel at all court hearings and town board meetings regarding the construction of a roadway across his property subjected himself to the court's jurisdiction); *Wachsmuth*, 352 N.W.2d at 133 (in making motion to reduce child support obligation, appellant assumed personal jurisdiction existed, thereby subjecting himself to the court's jurisdiction).

By proceeding through trial and then delaying nearly three years before filing motions to vacate, Langlais and LaBore waived any right to assert the lack of jurisdiction claim based on ineffective service. *See Mississippi Valley Dev. Corp. v. Colonial Enters., Inc.*, 300 Minn. 66, 73, 217 N.W.2d 760, 764 (1974) (defendant who subjected himself to court's jurisdiction and delayed about 16 months after allegedly defective service of process before raising jurisdictional defense waived any right to assert lack of jurisdiction defense).

State Farm, Langlais, and the estate argue LaBore preserved the lack of jurisdiction defense by raising the issue during the pretrial hearing on the motion for substitution. We disagree. His objection at the hearing was based on no party having been substituted for Wayne Bollmeier following his death and the estate not having been notified of its right to have its own attor-

ney participate in the defense. After the estate was substituted, LaBore made no objection based on ineffective service before filing the motion to vacate. Instead, he participated fully throughout the trial and presented a defense for the estate against Nancy Bollmeier's claims.

Having determined that Langlais consented to LaBore's representation and submitted to the jurisdiction of the trial court, we next consider whether the trial court erred in denying Nancy Bollmeier's motion to amend the complaint to substitute Langlais, in his capacity as personal representative, for the estate as the named defendant in this action.

State Farm argues the order denying the motion to amend the complaint is not appealable. On appeal from a judgment, this court may review any order involving the merits of the case or affecting the judgment or "any other matter as the interest of justice may require." Minn. R.Civ.App.P. 103.04. Even if the order is not independently appealable, in the interests of judicial economy, we will consider Nancy Bollmeier's appeal to avoid further delay in the resolution of this case.

In *Chan v. Katzenmeyer*, 391 N.W.2d 907, 907–08 (Minn.App.1986), the appellant began an action against a person who had died several years earlier. When she learned that the respondent had died, the appellant caused service to be made on the personal representative for the respondent's estate. *Id.* at 908–09. However, the respondent was still named as the defendant in the action. *Id.* at 908. The trial court denied the appellant's motion to amend the pleadings to substitute the personal representative's name for the respondent's name as defendant and dismissed the action. *Id.* This court reversed the trial court's denial of appellant's motion. *Id.* at 911.

*Chan* is distinguishable from this case because the personal representative in *Chan* received valid service. *Id.* at 910. However, by consenting to LaBore's representation and submitting to the trial court's

jurisdiction, Langlais waived any right to object to improper service. We, therefore, conclude *Chan* is dispositive of the issue in this case and direct the trial court on remand to substitute Langlais, in his capacity as personal representative, as the defendant in this action.

## II.

■ Rulings on the admissibility of evidence are left to the trial court's sound discretion. *In re Conservatorship of Torres*, 357 N.W.2d 332, 341 (Minn.1984).

■ Relying on *Lundgren v. Eustermann*, 370 N.W.2d 877 (Minn.1985), the estate argues Deutsch was not qualified to testify as an expert on Nancy's projected need for future personal care services because Deutsch was not a medical doctor. In *Lundgren*, the supreme court held that a psychologist was not qualified to give expert testimony on the standard of care to be exercised by a medical doctor in prescribing Thorazine. *Id.* at 880–81. Although the psychologist had scientific knowledge about the nature and effects of Thorazine, he had no training or practical experience in prescribing Thorazine for a patient. *Id.* In contrast, Deutsch had both an educational background and practical experience in the subject of his testimony. The trial court did not err in determining Deutsch was qualified to testify as an expert on Nancy Bollmeier's projected life care plan. *See* Minn.R.Evid. 702 (witness qualified by knowledge, skill, experience, training, or education may testify as an expert).

■ The estate also contends Deutsch's testimony should have been excluded because he relied primarily on medical reports in forming his opinion. In developing a life care plan for Nancy Bollmeier, Deutsch reviewed Nancy Bollmeier's medical records from after the accident, Wayne and Nancy Bollmeier's deposition transcripts, neuropsychological evaluations and test data, and some pre-accident records. Deutsch also interviewed Nancy Bollmeier by telephone, and one of his staff members met with her personally. This was the type of information Deutsch typically relied on in developing life care plans. The trial court's decision to allow Deutsch's testimony was not an abuse of discretion.

■ The estate argues Hunter should not have been allowed to testify about Nancy Bollmeier's loss of future earning capacity because Nancy Bollmeier had not worked outside the home since 1972 and had never expressed any desire to return to work. However, the Minnesota Supreme Court has held that recovery for loss of future earning capacity was appropriate for a homemaker with no plans to resume employment outside the home. *LeMay v. Minneapolis St. Ry.*, 245 Minn. 192, 200, 71 N.W.2d 826, 831 (1955).

> [T]he impairment of the ability of a woman to work is an injury to her personal rights wholly apart from any pecuniary benefit the exercise of such power may bring, and if her injury has lessened this power she ought to be able to recover damages.

*Id.*, 71 N.W.2d at 831 (quoting *Marshall v. Smith*, 131 Cal.App. 258, 261, 21 P.2d 117, 118 (1933)), *quoted in Kwapien v. Starr*, 400 N.W.2d 179, 183–84 (Minn.App.1987). The trial court properly allowed Hunter to testify and properly excluded the evidence about Nancy Bollmeier's financial circumstances.

## III.

■ State Farm argues it was prejudiced because it was not allowed to participate in the settlement agreement between Nancy Bollmeier and C–Tek and Dynex. State Farm contends the agreement is a release by Nancy of all claims against Wayne Bollmeier. We disagree. The language of the agreement shows the parties to the settlement intended to settle the vicarious liability of Wayne Bollmeier's employers, not Wayne Bollmeier's personal liability. Also, the agreement specifically distinguishes between the current action and future claims. In the current action, the settlement dismisses only claims against C–Tek and Dynex.

■ The estate also contends damages awarded to Nancy Bollmeier by the

jury should be reduced by the amount Nancy Bollmeier received under the settlement pursuant to the collateral source statute, Minn.Stat. § 548.36 (1992). The primary purpose of the collateral source statute is to prevent double recovery by a plaintiff. *Imlay v. City of Lake Crystal*, 453 N.W.2d 326, 331 (Minn.1990). Here, the record shows the settlement will not result in a double recovery because it was for a loan to be paid back when and to the extent judgment was collected. Because there will be no double recovery, the collateral source statute is inapplicable.[1] *See id.* at 335 (collateral source statute does not apply to reduce awards where there is no possibility of double recovery).

### DECISION

The trial court properly denied the motions to vacate the judgment. The trial court properly allowed the testimony about Nancy Bollmeier's loss of earning capacity and need for a life care plan. The trial court properly determined the settlement agreement was valid. The proceeds Nancy Bollmeier received pursuant to the settlement should not be deducted as a collateral source because there will be no double recovery. The trial court erred in denying Nancy Bollmeier's motion to amend the complaint.

**Affirmed in part, reversed in part and remanded.**

---

1. Because there will be no double recovery, we need not consider whether the collateral source statute is otherwise applicable to the settlement.