*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1628**

Kristine Benton,
Appellant,

vs.

Tom Hedine, et al.,
Respondents.

**Filed June 29, 2015
Affirmed
Schellhas, Judge**

Douglas County District Court
File No. 21-CV-14-223

Michael A. Bryant, Bradshaw & Bryant, PLLC, Waite Park, Minnesota (for appellant)

Michael D. LaFountaine, Rachael R. Holthaus, Quinlivan & Hughes, P.A., St. Cloud, Minnesota (for respondents)

Considered and decided by Schellhas, Presiding Judge; Larkin, Judge; and Reyes, Judge.

## UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges the summary-judgment dismissal of her negligence claim that arose out of her slip and fall on a sidewalk patch of ice in front of respondents' business establishment. We affirm.

# FACTS

Around noon on February 5, 2011, while shopping with a friend in a commercial area in Alexandria, appellant Kristine Benton slipped on a sidewalk patch of ice and fell to the ground, sustaining allegedly severe and permanent injuries to her head, neck, and shoulder. At the time that she slipped and fell, Benton was talking and laughing with her friend. The ice on which Benton slipped was located in front of Hedine Jewelers, a business owned and operated by respondent-brothers Tom and Paul Hedine. Hedine Jewelers has an awning on the front of its building, and the parties agree that the sidewalk patch of ice formed due to snow or ice melting and dripping from the awning and refreezing on the sidewalk. The parties' estimations of the size of the ice patch range from around four or five inches to around two square feet. The patch of ice was darker in color than the rest of the sidewalk, and Benton could see the ice patch after she fell.

Paul Hedine testified during a deposition that the ice patch was not present when he arrived at the store on the morning of February 5 and that he usually arrives at the store by 8:00 a.m. Tom Hedine testified that the sun does not hit the front of the building in the morning but starts to hit the front of the building around "lunchtime"; the building gets the "afternoon sun." The Hedines contracted with a company to maintain and clear the sidewalk in front of Hedine Jewelers, and they also have salt in their store to apply to the sidewalk as they deem necessary. They admit that they have seen water drip off of the awning and either drain off of the sidewalk or accumulate as ice when the sun hits the awning. No salt or sand was on the sidewalk in front of Hedine Jewelers at the time of

Benton's fall and, except for the patch of ice where Benton slipped, the sidewalks along the street were clear with no accumulation of snow or ice.

Benton argues that her injuries were the result of the Hedines' negligent maintenance and inspection of their property and failure to warn the public of a potential danger on the property. The district court determined that the Hedines owed no legal duty of care to Benton because the ice patch was a visible and obvious hazard and granted summary judgment to the Hedines. The court further determined that the Hedines were not negligent in maintaining their property because they had no actual or constructive knowledge that a dangerous condition existed and no genuine issue of material fact existed.

This appeal follows.

## DECISION

A district court must grant summary judgment if, based on the entire record before the court, there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. "We review a district court's grant of summary judgment de novo to determine whether any genuine issue of material fact exists and whether the district court erred in applying the law." *Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293, 299 (Minn. 2014). In doing so, we "view the evidence in the light most favorable to the party against whom summary judgment was granted." *Finn v. Alliance Bank*, 860 N.W.2d 638, 655 (Minn. 2015) (quotation omitted).

"To recover on a claim of negligence, a plaintiff must prove: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) that the breach of the duty

3

was a proximate cause of the injury." *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014). Summary judgment for the defendant is appropriate "if there are no facts in the record before us giving rise to a genuine issue for trial as to any one of these essential elements." *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995). "The existence of a duty of care is a question of law that we review de novo." *Doe 169*, 845 N.W.2d at 177.

*Actual or Constructive Knowledge of a Danger*

"[A] landowner has a duty to use reasonable care for the safety of all entrants upon the premises." *Olmanson v. LeSueur Cnty.*, 693 N.W.2d 876, 880 (Minn. 2005). The landowner must perform reasonable inspections of the premises and must either repair a dangerous condition or provide adequate warnings if he has actual or constructive knowledge of the condition. *Id.* at 881; *see also Messner v. Red Owl Stores, Inc.*, 238 Minn. 411, 415, 57 N.W.2d 659, 662 (1953) (stating that landowner is not insurer of safety and that plaintiff in slip-and-fall case has "burden of proving either that [landowner] caused the dangerous condition or that [he] knew, or should have known, that the condition existed"); *Rinn v. Minn. State Agric. Soc'y*, 611 N.W.2d 361, 365 (Minn. App. 2000) ("Unless the dangerous condition actually resulted from the direct actions of a landowner or his or her employees, a negligence theory of recovery is appropriate only where the landowner had actual or constructive knowledge of the dangerous condition.").

A landowner may be charged with constructive notice of the presence of a dangerous condition if the condition "existed for a sufficient period of time." *Wolvert v. Gustafson*, 275 Minn. 239, 241, 146 N.W.2d 172, 173 (1966); *see also Anderson v. St.*

4

*Thomas More Newman Ctr.*, 287 Minn. 251, 253–54, 178 N.W.2d 242, 243–44 (1970) (affirming directed verdict in slip-and-fall case lacking evidence that puddle of water existed for any "appreciable" or "measurable" period of time before plaintiff's fall); *Rinn*, 611 N.W.2d at 365 (stating that speculation as to how long dangerous condition existed warranted summary judgment for landowner and determination that defendants did not have constructive notice of puddle on step that was present for half an hour at most and could have formed only moments before plaintiff slipped and fell).

The parties agree that no evidence shows that the Hedines had actual knowledge of the existence of the patch of ice before Benton fell. Benton argues that the Hedines had constructive knowledge of the ice patch because they knew that water would at times drip off of the awning and accumulate as ice on the sidewalk. But the evidence does not reflect that the ice patch was present for any appreciable or measurable period of time before Benton fell, such that the Hedines should have known of its existence. The ice patch was not present on the morning of February 5 when Paul Hedine arrived at the store. The ice patch likely formed when the sun began to hit the awning around noon and cause water to drip onto the sidewalk at around the same time as Benton's fall. And Benton points to no evidence showing that the ice patch was present for more than a brief period of time. Because the Hedines had no actual or constructive knowledge of the patch of ice, the district court properly determined that they had no duty of care to protect Benton from the dangerous condition.

*A Known or Obvious Danger*

Even if the Hedines had actual or constructive knowledge of the ice patch, they had no duty to protect Benton from an obvious danger. A landowner's duty of care to entrants does not require him to protect against dangerous conditions "whose danger is known or obvious" to entrants, "unless the [landowner] should anticipate the harm despite such knowledge or obviousness." *Louise v. Louise*, 636 N.W.2d 314, 319 (Minn. 2001) (quotation omitted). On appeal, Benton concedes that the patch of ice was obvious, but she argues that the Hedines should have anticipated harm due to slipping on the ice patch despite its obviousness.

"A reason to anticipate the harm may arise when the landowner has reason to expect that the [entrant] will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." *Sutherland v. Barton*, 570 N.W.2d 1, 7 (Minn. 1997) (quotation omitted). *Compare Peterson v. W. T. Rawleigh Co.*, 274 Minn. 495, 497–98, 144 N.W.2d 555, 558 (1966) (determining as reasonable conclusion that defendant employer should have anticipated that elderly employees would attempt to negotiate obviously icy parking lot to get to loading dock), *with Jensen v. Allied Cent. Stores, Inc.*, 283 Minn. 332, 334, 167 N.W.2d 739, 741 (1969) (distinguishing employee-plaintiff in *Peterson* from shopper who fell down some steps while reaching for bonnet by noting that employee's "livelihood was involved, while [the shopper] was under no such compulsion"). The parties agree that the sidewalk was clear except for the patch of ice at issue, and Benton admitted that the ice patch did not stretch the entire width of the sidewalk from the

6

storefront to the curb. There is no evidence suggesting that the ice patch was located directly in front of an entrance to a business. The Hedines could have anticipated that a reasonable person walking along the sidewalk would walk around the obvious ice patch rather than step on the ice.

Benton argues that the Hedines should have anticipated harm due to stepping on the ice patch because Hedine Jewelers may have had a distracting display in its store windows that would cause a passerby to fail to notice the ice patch. "Landowners must . . . protect entrants from dangerous conditions on the land, even open and obvious conditions, if there is a reasonable expectation that the entrant's attention will be distracted from the danger." *Taney v. Indep. Sch. Dist. No. 624*, 673 N.W.2d 497, 503 (Minn. App. 2004), *review denied* (Minn. Mar. 30, 2004); *see also Gilmore v. Walgreen Co.*, 759 N.W.2d 433, 436 (Minn. App. 2009) (stating that landowner may have reason to anticipate harm to entrant if entrant's "attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it" (quotation omitted)), *review denied* (Minn. Mar. 31, 2009).

But Minnesota appellate courts have rejected the proposition that a distracting display by itself creates a duty of a storeowner to protect or warn against an obvious danger. *See Jensen*, 283 Minn. at 334, 167 N.W.2d at 741 ("We have held that the presence of distracting displays does not in itself constitute negligence or excuse patrons from seeing steps which are obvious."); *Johnson v. R. E. Tapley, Inc.*, 272 Minn. 19, 23, 136 N.W.2d 538, 542 (1965) ("Defendants were not obliged to anticipate that the mere fact [that plaintiff] had to pass display windows as she left defendants' store would excite

7

anything more than an indifferent interest on the part of plaintiff." (quotation omitted)). And no evidence shows that Hedine Jewelers store windows distracted Benton in any way, even though Paul Hedine testified that he and his brother place merchandise in the store windows so passersby can see what is available. Because the patch of ice on which Benton slipped was obvious and the Hedines had no reason to anticipate harm from the ice patch despite its obviousness, the Hedines had no duty of care to protect Benton from the dangerous condition. We conclude that the district court did not err by its summary-judgment dismissal of Benton's negligence claim.

**Affirmed.**