**PUBLIC UTILITIES COMMISSION: HOME RULE CHARTER CITIES:** City public utilities commission is authorized to set reasonable rates, including rates in excess of the precise amounts required to operate utilities, and the City Council may transfer moneys from the public utilities fund to the city general fund for public purpose expenditures, subject to applicable charter provisions.

624a-3

June 28, 1999

Timothy E. J. Fox
Breckenridge City Attorney
420 Nebraska Avenue
Breckenridge, MN 56520

Dear Mr. Fox:

Your letter addressed to the Office of Attorney General states substantially the following:

## FACTS

The City of Breckenridge is a home rule charter city which has established a public utilities commission pursuant to its charter. The commission has set utility rates which have, from time to time, exceeded the expenses of operating the City utilities. Excess funds have been transferred to the City's general fund and been used for other public purposes. The commission has also hired a consultant to assist in establishing rates and has accepted the consultant's recommendations. The City received an opinion of the Attorney General dated August 27, 1958, Opinion No. 624a-6. That opinion determined that the City Council was authorized, under the terms of the charter, to transfer to the City general fund moneys in the public utilities fund in excess of $40,000. The opinion also held that the public utilities commission could use its discretion in deciding what factors should be taken into consideration in establishing "fair and reasonable" rates.

Since the Opinion was issued, two of the statutes cited therein have been repealed. Minn. Stat. §§ 452.02 and 454.041 were repealed in 1976. Act of March 12, 1976, ch. 44, 1976 Minn. Laws 139.

Timothy E.J. Fox
June 28, 1999
Page 2

Then you ask the following questions:

## QUESTION ONE

Does the repeal of either one or both of these statutes modify the 1958 Attorney General's Opinion making the opinion invalid?

## OPINION

We answer your question in the negative. The opinion did not rely on either of the repealed statutes[1] in reaching its conclusions. Rather, the opinion was based on, (1) the absence of any statutory language or charter provisions prohibiting the acts in question, (2) traditional, common law powers and duties of municipal corporations, as interpreted by the courts, and (3) charter provisions expressly authorizing the relevant activities. In this regard, the opinion noted:

> In the opinion of this office to your then City Attorney, dated February 20, 1936 (624a-6) it was ruled that cities may use surplus earnings derived from municipally-owned utilities for other municipal purposes where there were no other provisions in the applicable statutes or charter under which such municipalities are operating prohibiting the use of such surplus earnings for other municipal purposes.

Minn. Stat. §§ 452.02 and 454.041 were mentioned in the fourth question asked in 1958 by then City Attorney Gospodar as follows:

---

[1] Minn. Stat. § 452.02, first adopted by the Legislature in 1907, set forth a comprehensive scheme authorizing every city in the state, *inter alia*, to own, construct, acquire, purchase, maintain, and operate any public utility within its corporate limits. The statute also authorized cities to borrow money and issue bonds for those purposes, set out procedures for voter approvals, and empowered the city council to fix and prescribe rates and charges for utility services. The statute was presumably repealed because in 1949, essentially the same powers had been granted to all statutory cities with the adoption of Minn. Stat. §§ 412.321-412.391, and home rule charter cities had the authority required to adopt charter provisions providing for municipal ownership and operation of public utilities pursuant to Minn. Stat. ch. 410. When repealed in 1976, Minn. Stat. § 452.02 was thus, for all practical purposes, redundant. The same was true of Minn. Stat. § 454.041, which conferred utility rate-making authority on cities of the third and fourth classes.

What factors should be taken into consideration by the Public Utilities ommission in determining the rates and charges to be charged for the utilities furnished? Should the rate be calculated to produce a reasonable return on the capital invested in the utilities under an economical and efficient management of the same? (This is the rule set out in section 454.041 of the Minnesota Statutes in connection with the rates to be charged by public service corporations). Shall the Commission be guided by section 452.02 of the Minnesota Statutes which states: 'These rates and charges shall be high enough to produce a revenue sufficient to bear all the costs of maintenance and operation and to meet interest charges on all bonds or certificates issued on account of the public utility and to permit an accumulation of a surplus or sinking fund that would be sufficient to meet all the outstanding bonds or certificates at maturity.'?

Minn. Stat. § 454.041 is not mentioned in the answer to this or any of the other questions addressed in the 1958 opinion. Minn. Stat. § 452.02 is referred to in the answer to the fourth question. First, however, the opinion cites McQuillin's treatise on Municipal Corporations and several judicial decisions, concluding that on the basis of these authorities, "a rate may be fixed which will permit a reasonable return on the capital invested in the utility." The opinion then states, "We agree with you that the Commission will be guided by Minnesota Statutes 452.02. That section appears to apply to all cities. See opinion of the Attorney General to Attorney for Village of Mahtomedi, March 30, 1933 (476b-15), copy enclosed." Nowhere in the opinion is the statute cited as authority for setting reasonable rates, including a return on investment, or for transferring revenues from the public utility fund to the general fund.

Although both sections 452.02 and 454.041 were repealed in 1976, cities retain the authority under current law and applicable charter provisions to establish public utility commissions which can set and charge reasonable rates for utility services. Home rule charter cities continue to rely on their charters for such authority, as granted to them by Minn. Stat. § 410.07 (1998) (charter may provide for the establishment and administration of all departments of a city government, and for the regulation of all municipal functions, as fully as the legislature

might have done)[2]. This office has rendered several opinions affirming that charter cities have such authority. See Op. Atty. Gen. 59a-22, September 2, 1958; Op. Atty. Gen. 624a-6 (February 20, 1936); Op. Atty. Gen. 624a-3 (August 23, 1957); Op. Atty. Gen. 59a-36 (September 15, 1947).

Statutory cities now derive similar authority from Minn. Stat. § 412.211 (1998) (general powers of statutory cities include powers, rights and duties of municipal corporations at common law); Minn. Stat. § 412.331 (1998) (cities may establish a public utilities commission); and Minn. Stat. § 412.361 (1998) (public utilities commissions have authority to set rates for utility service and to enter into agreements with city council for transfers of surplus utility funds to the general fund). These powers and authorities, whether based on charter provisions or derived from statute, were not affected by the repeal of Minn. Stat. §§ 452.02 and 454.041. Therefore, assuming there have been no material amendments to the City charter, the Opinion of the Attorney General dated August 27, 1958, remains valid and applicable to the City of Breckenridge in all respects.

## QUESTION TWO

May the Public Utilities Commission as stated in the original opinion use its discretion in deciding what factors should be taken into consideration in fixing fair and reasonable rates which will permit a reasonable rate of return on the capital invested in the utility?

## OPINION

In light of the answer to question one above, we respond in the affirmative, again assuming there have been no amendments to the City charter which would affect the rate-making

---

[2] Although not explicitly conferring the power to own and operate public utilities, Minn. Stat. §410.07 clearly authorized charter cities to so provide to the same extent as the legislature could have done, thereby delegating ample authority to charter cities to adopt any constitutional scheme for the ownership, operation and regulation of municipal utilities within their boundaries.

authority of the Commission in such a way as to limit its discretion. The common law on municipal corporations continues to apply to home rule charter cities to the extent not inconsistent with express charter provisions. The law on municipal corporations relevant to this issue remains substantially as expressed in the previous opinion. See McQuillin, *Municipal Corporations*, § 35.06 (3d Ed.). Thus, in our opinion, a municipal public utilities commission may continue to exercise its discretion in deciding what factors should be taken into consideration when setting rates and charges, as long as such rates and charges are fair and reasonable and the charter does not specify or limit the factors which the commission may consider. *Id.*, §§ 35.37a, 35.37c (3d Ed.).

## QUESTION THREE

May a Public Utilities Commission hire a consultant in establishing rates and adopt the recommendations of that consultant?

## OPINION

We answer your question in the affirmative. Case law and prior opinions of this office have of course uniformly held that, absent specific statutory or charter authority, local governing bodies may not delegate their powers and duties calling for the exercise of judgment and discretion to other persons or bodies. *See e.g., Muhring v. School District No. 31,* 244 Minn. 432, 28 N.W.2d 655 (1947); *Minneapolis Gas and Light Co. v. City of Minneapolis,* 36 Minn. 159, 30 N.W. 450 (1886); Ops. Atty. Gen. 1007, July 8, 1977; 1001-a, September 13, 1950. However, reliance on a consultant to prepare and present a recommendation for rates to a commission for its consideration is not an improper delegation of authority, as long as the commission exercises its independent judgment and discretion in deciding whether to adopt the recommendation as its own decision. This is no different than a governing body relying on its staff or on a committee of its own members to study issues and recommend a course of action to the entire body for its consideration. McQuillin, *Municipal Corporations*, § 10.41 (3d Ed.). Of

course an appropriate resolution, motion, or other form of decision must be adopted by the commission according to its established procedures. Having done so, the commission has exercised its authority and adopted the recommendation as its own act. *Id*, § 13.51 (3d Ed.). Any decision of the governing body is of course subject to challenge as unfair and unreasonable, but it is not invalid simply because it was based on a recommendation from a consultant hired by the commission for that purpose.

## QUESTION FOUR

May the Public Utilities Commission in establishing rates take into consideration transfers from the Public Utilities Commission to the General Fund?

## OPINION

In light of our response to questions one and two above, we answer this question in the affirmative. Again, subject to the requirement that rates be fair and reasonable, and that any applicable charter provisions do not provide otherwise, a municipal public utilities commission may take into consideration transfers to the general fund. McQuillin, *Municipal Corporations*, § 35.37c (3d Ed).

Very truly yours,

MIKE HATCH
Attorney General

GREGORY P. HUWE
Assistant Attorney General